NEWTON v. WOODLEY.

1. USURY—INTEREST.—A contract providing for payment of eight per cent. interest in advance, and when not so paid to draw interest until paid at same rate, is not usurious.   *Divided Court.*

2. COURT EN BANC.—Upon other than constitutional questions, the

Court *en banc* can not be called together except upon request of two of the Justices of the Supreme Court.

3. REHEARING.—Questions of public importance, and of the construction of written contracts, are not sufficient to modify the well established rule as to petitions for rehearings.

4. REHEARING refused.

Before GAGE, J., Marlboro, August, 1898.    Affirmed.

Foreclosure by Katie M. Newton against Jonathan Woodley.    The following is the Circuit decree, omitting the statement:

The defendant moved, on notice, at the trial for leave to amend the answer in two particulars, to wit: by pleading that he then had, and ever since has had, the aforesaid sum of money in gold coin for the purpose of paying said debt, and a renewal of the tender first alleged in discharge of the mortgage; and by pleading that the interest charged and received by plaintiff under said obligation was nearly nine per cent. instead of eight per cent.    The first amendment means that the defendant has kept in hand at his own expense the money first offered 10th February, 1897, at all times since then, ready to pay it to his creditor.    If that be so, he ought not to have to pay interest for that period (from 10th February, 1897, until now) on two sums, to wit: the sum in hand and the debt to his creditor.    If, however, he has not kept the money in hand ready for plaintiff, he has lost nothing, and should pay interest on his debt from 10th February, 1897.    The testimony of the defendant and of D. D. McColl is conclusive that the defendant has not kept in hand the money which he first offered; therefore, to grant the amendment would not be "in the furtherance of justice."    The first amendment is refused.

The second amendment is granted, because it is an allegation which defendant intended to make and attempted to make in the answer.    The plaintiff was advised by the answer of the plea of usury, and the proposed amendment perfects the allegation.

And now I come to consider that plea; it is the chief contention in this cause, and its rightful decision has given me long and painful anxiety. It is agreed on all hands that the character of the transaction in this cause must be judged by the written obligation. That instrument is practically free from ambiguity. It is dated 21st November, 1890, and provides for the payment of $6,827.60 on 1st November, 1895, "with interest to be calculated from this date at the rate of eight per cent. per annum both before and after maturity, *discounted,* and payable annually on the *first* day of November in every year, including the present, *unpaid* interest to draw interest at same rate as principal" (italics mine). The mortgage embodies the following language: "With interest discounted at eight per cent. per annum, payable annually," which is practically that used in the obligation. The words italicized are not entirely apt. The last is manifestly used to express "past due" interest; the second refers to a day of payment already past, and must be held to refer in this case to 21st November, 1890; the first expresses a repugnancy, to wit: interest discounted, but the meaning is manifest. Upon the whole, I take it to be reasonably clear that the contract stipulates for the payment of interest at the rate of eight per cent. per annum on $6,827.60; that interest for the first year should be due and payable on the day the obligation was made, that is to say, in advance, and so on for each successive year; that in the event of the non-payment of the interest as stipulated, it should thereafter bear interest at the same contract rate. Is that a contract "for the payment of a greater rate of interest than eight per cent. per annum?" It is now established by the Courts that the eight cents of interest for the use of a dollar one year may be collected at the beginning of the year instead of at the close thereof; and that is called discount. It is true, Judge Story placed an early decision on the ground that banks were by their charters expressly authorized to "discount" paper. *Fleckner* v. *Bank,* 8 Wheat, 338. But that reason has been ignored, and all banks and all others lending

money are now allowed to collect a year's interest in advance, without incurring the charge of usury. It may, therefore, be confidently affirmed that it is not a violation of the statute of this State to collect a lawful rate of interest in advance. And this statement of the law is made by judges and authors, who admit that the *result* of such a transaction exceeds the lawful rate of interest collected at the close of the year. The truth is, the statute has not said at what time the hire must be paid, whether at the beginning, midway, or at the close of the year; it has only fixed the amount of the hire. If it be lawful to pay the interest a year in advance, it must be lawful to *agree* to so pay it. That is this case. And if lawful to agree to pay in advance, then interest on interest follows as a legal sequence, and at the rate of express agreement, or in the absence of such, at the legal rate. The fact that the result yields more than does eight per cent. paid at the close of the year is not a test; because discount yields more than that and discount is lawful. Would the legality of a note be questioned which was drawn on the first of January for $100, due on the 31st of December, same year, with interest thereon from date until maturity, at eight per cent. per annum, payable on the first of January of the same year of making? The objection at bar involves no different principles of law. I am free to confess this process of reasoning has led me away from my preconceived notions, and I have arrived at this conclusion only after anxious reflection. I have read the cases cited by the attorneys for defendant, notably that from Ohio (*Carpenter* v. *Insurance Co.,* 40 Ohio, 260), and the views there expressed are contrary to the conclusion herein. It was strongly and ably argued that the agreement to pay the interest in advance, and to pay interest on such deferred interest, amounted to collecting interest on a sum which had not yet been earned. That is so, and it is a hard contract; but if not usurious, there is no law against it. It was also urged that such a contract would soon eat up all the debt with interest. That is true; but all interest is subject to a like objection, differing only in degree. I have

examined with care the case of *Bank* v. *Parrott,* 30 S. C., 61. It is not favorable to the contention of defendant. In that case the transaction involved the charging of interest at ten per cent. on the first year's *unearned* interest. It was held usurious, *because* there was no express contract to pay ten per cent. on that interest; seven per cent. thereon was allowed by the Court, and that although not stipulated for in the note. I am not able to differentiate the principal of that case from the contention of plaintiff in the case at bar. My conclusion, therefore, is that the obligation, which is the subject of this action, is not by its terms in violation of the statutes of this State regulating the rate of interest on contracts.

If that be so, did the defendant tender the debt to plaintiff on 10th February, 1897, and thereby satisfy the mortgage made to secure it? It is true, the tender of a sum due on a mortgage debt fulfills the contract of the debtor, and under our statute and decisions entitles the debtor to have satisfaction of his mortgage entered on the record. Rev. Stat., 1893, section 1894. *Salinas* v. *Ellis,* 26 S. C., 347 and 348. On the other hand, a tender coupled with conditions does not have that effect, because it may not be an offer to comply with the debtor's contract. The question of difficulty is to determine the character of the tender, whether conditional or not. That is a mixed question of fact and law. I conceive the fact to be this : plaintiff claimed one amount to be due on the debt, defendant claimed another and smaller amount to be due thereon; defendant offered to pay the sum admitted by him; he went to plaintiff's office with a specific sum of gold, and said, "Here is what I owe you, I want my papers." Plaintiff answered, "I don't refuse to take the money in part payment, but will not take in full." (Testimony of J. Woodley, pp. 4 and 5.) There was a dispute about the amount due; and in such a case the debtor cannot by tender force the creditor to accept or lose his security. (*Price* v. *Robinson,* 2 Bail., 275.) I conclude, therefore, that the tender made herein was of such a character as did not oper-

ate to satisfy the mortgage.    The defendant's counter-claim falls with the plea of usury.    My opinion, therefore, is that plaintiff is entitled to foreclose for such amount as may be due on mortgage debt.

From this decree, the defendant appeals.

*Messrs. T. W. Boucher* and *J. H. Hudson,* for appellant, cite: *This contract is usurious:* 31 S. C., 282; 50 N. Y., 430; 27 Ill., 301; 40 Ohio St., 260; 1 Strob., 115, 467.    *Agreement to pay interest upon interest not due is usurious:* 67 N. Y., 162; 31 W. Va., 410; 7 S. E. R., 265.    *It is lawful to discount commercial paper at highest rate of interest for short time:* 30 S. C., 61.    *But not in private loans, with long time to run:* 22 Ark., 413; 40 Ohio St., 260.

*Mr. Knox Livingston,* contra, cites : *Motions to amend pleadings are within discretion of Court:* 9 S. C., 334; 31 S. C., 588; 32 S. C., 57.    *And such order is not appealable:* 8 S. C., 50; 17 S. C., 451; 51 S. C., 409.    *Conditional tender not good:* 2 Bail., 274; 15 Rich., 318; 39 S. C., 1; 17 S. C., 334.    *Contract is not usurious:* 42 Md., 592; 30 S. C., 66; 3 Rich., 125; 1 Strob., 426; 2 Strob. Eq., 166; 2 S. C., 248. *Stipulations for highest rate of interest annually or semi-annually allowed, even though it makes more than legal rate:* 2 N. & McC., 38; 3 Rich., 426; 2 Strob. Eq., 166; 11 Rich., 680; 61 Ga., 34; 69 N. C., 89; 53 S. C., 32.    *Highest rate of interst payable in advance may be stipulated for without violating statute:* 8 Blackf., 67; 5 Ills., 21; 30 Hun., 201; 6 N. J. Eq., 625; 141 U. S., 384; 40 Ohio St. R., 248; 1 Wall., 384; 8 Wheat., 338; 3 Pet., 6; 29 L. R. A., 761; 11 Rich., 680; 30 S. C., 66; 53 S. C., 39; 7 Rob., 939; 110 Ill., 390, 235; 24 Neb., 815.    *Counter-claim cannot be sustained here:* 27 S. C., 111; 47 S. C., 405; 50 S. C., 19, 191.

These opinions were filed March 23, 1899, but by order of Court remittitur was stayed until

May 9, 1899.    The opinion of the Court was delivered by

MR. JUSTICE POPE. On the 21st day of November, 1890, the defendant executed and delivered to C. S. McCall the following promissory note or agreement, to wit: "$6,827.60. Bennettsville, S. C., 21st Nov., 1890. On the first day of November, 1895, for value received, I promise to pay to the order of C. S. McCall, the principal sum of $6,827.60, with interest to be calculated from this date at the rate of eight per cent. per annum, both before and after maturity, discounted and payable annually on the first day of November in every year, including the present; unpaid interest to draw interest at the same rate as principal, both principal and interest payable at the Bank of Marlboro. Payments to be made in United States gold coin of the present standard of weight and fineness, or its equivalent at the option of the payee. It is further agreed, that if default be made in the payment of any of the installments of interest, aforesaid, at the time and place aforesaid, when and where the same becomes due and payable, then and in that event, the said principal sum of $6,827.60 shall at the election of the legal holder thereof, at once become and be due and payable, anything hereafter contained to the contrary notwithstanding, such election to be made without notice. This note is secured by mortgage of even date herewith, duly recorded. Jonathan Woodley." A mortgage of lands was on the same day executed by Woodley to McCall to secure the aforesaid obligation, which mortgage is in full force until to-day. The note and mortgage were both made payable to Mrs. Katie M. Newton, without recourse, by C. S. McCall. The following partial payments are indorsed on the note: "Received on this note $1,220, December 18, 1890. Received on this note as of December 18, 1890, $2,255. $270. Received from Jonathan Woodley $270, * * * November 23, 1891. $275. Received $275 on this note * * * November 28, 1892. $273. Received on this note $273, December, 30, 1893. $550. Received $550 on this note, November 23, 1895. $1,930. Received $1,930, * * * December 28, 1896."

On the 30th January, 1897, the attorney in fact for the plaintiff prepared a statement or calculation, which showed that the defendant owed the plaintiff $1,949.63. On 28th December, 1896, defendant had a calculation made by Mr. Sternberger, which showed his indebtedness less than plaintiff's statement. Then his attorney, Mr. T. W. Bouchier, made a calculation, by which the sum of $1,769.32 was found due. This amount of $1,769.32 was tendered to the attorney in fact for the plaintiff in gold coin, in full payment of debt and interest, on the 10th February, 1897. While the amount was declined in full payment, it was offered to take the amount as a credit on the mortgage, which offer the defendant declined. The receipt tendered by plaintiff's attorney in fact was in these words: "$1,769.32. Received from Jonathan Woodley $1,769.32 on mortgage debt to my wife, K. M. Newton, and if there be no more due on them, I am to cancel them. If there be any more due, he is to pay it, after proper calculation by any one competent to make it. H. H. Newton. February 10, 1897."

Action was commenced by plaintiff against defendant on the 24th day of March, 1897, to foreclose the mortgage and procure decree establishing true indebtedness of defendant to plaintiff, which she alleged at that date to be $2,877, with interest thereon at the rate of eight per cent. per annum from the 18th day of December, 1896, and in the complaint the foregoing facts were substantially set forth. The answer of the defendant really is pointed against the contract as tainted with usury in these words: "1. That by the terms of the said note, the plaintiff, as assignee, has received and accepted usurious interest by charging eight per cent. interest on the principal sum, and also discount and interest on the interest due in advance, and that by the terms of said note or agreement, the assignee of the plaintiff has made a contract with the defendant to charge him usurious interest, and in pursuance of the same has collected and accepted same, &c." Seeks to collect double the amount of $1,500, which he alleges he has paid as usurious interest. Also

seeks to have the mortgage declared satisfied by reason of the tender of over $1,700 on 10th February, 1897. Plaintiff replied. At the trial it was in evidence that the defendant had been indebted for some years to Col. C. S. McCall for over $6,000, which was secured by mortgage of land, and which indebtedness bore ten per cent. per annum. The defendant applied to McCall for a reduction in the interest. McCall, being a merchant, did not wish to do so; but said to Woodley, the defendant, that he thought Mr. H. H. Newton could lend the money at lower interest. When Mr. Newton was applied to, he said his wife could loan the money at the lower rate of interest. That the note now sued upon was drawn by Mr. Newton as the attorney for his wife, and the transaction of the 21st of November, 1890, although carried out in the name of C. S. McCall, was really that of Mrs. Katie M. Newton, the plaintiff. Also that Woodley had the papers read over to him before he signed them, and that he is a gentleman of intelligence. Really the contention between these parties is in a nutshell; it all turns on the power of a lender of money to contract for the loan of money at eight per cent. per annum, interest each year to be paid in advance, just as a discount, and if it is not so paid, to bear interest at eight per cent. per annum. When the Circuit Judge heard the case, he decreed that it was a legal contract between plaintiff and defendant; that it was free from usury; that the tender would, therefore, fail; that the counter-claim for double the excess of interest would also fail. He referred the case to the referee to compute the interest. Defendant now appeals, raising substantially these questions: First. That the Circuit Judge erred in not sustaining the question raised by defendant, that the rate sued upon was usurious. a. Because said note by its terms called for annually nine instead of eight per cent. interest. b. That the law does not allow greater interest than eight per cent., whether by discount or otherwise. c. Because it is not lawful to contract for the payment of the highest interest in advance, and for the payment of interest on unearned inter-

est unless paid in advance.   d. Because the purpose of the lender was to receive more than the highest interest allowed by law.   Second. Because the contract called for the payment of interest at eight per cent. per annum for twenty-one days in advance of the loan, and such was usury.   Third. Because the counter-claim was not allowed.   Fourth. Because defendant should not have been refused the right to amend his answer by alleging that the tender of payment made by defendant was a full tender of what was then due, and was made unconditionally, and was refused.

It was the duty of the Circuit Judge to construe the contract, it being in writing; he did so, and his construction is not appealed from.   He held: "It is agreed on all hands that the character of the transaction in this cause must be judged by the written obligation.   That instrument is practically free from ambiguity.   It is dated 21st November, 1890, and provides for the payment of $6,827.60 on 1st November, 1895, with interest to be calculated from this date at the rate of eight per cent. per annum both before and after maturity, *discounted* and payable annually on the first day of November in every year, including the present, *unpaid* interest to draw interest at same rate as principal (italics mine).   The mortgage embodies the following language, 'with interest discounted at eight per cent. per annum payable annually,' which is practically that used in the obligation.   The words italicized are not entirely apt. The last is manifestly used to express 'past due' interest; the second refers to a day of payment already past, and must be held to refer in this case to 21st November, 1890; the first expresses a repugnancy, to wit: interest discounted, but the meaning is manifest.   Upon the whole, I take it to be reasonably clear that the contract stipulates for the payment of interest at the rate of eight per cent. per annum on $6,827.60; that interest for the first year should be due and payable on the day the obligation was made, that is to say, in advance, and so on for each successive year; that in the event of the non-payment of the interest as stipulated, it

should thereafter bear interest at the same contract rate."
It seems to us that the Circuit Judge has grasped the meaning
of the terms employed in setting forth the contract of these
parties.    Now to pass upon the question of usury in the dif-
ferent phases of that question as presented by the grounds of
appeal, we must first recall the language of our statute,
which is : "No greater rate of interest than seven per centum
per annum shall be charged, taken, agreed upon or allowed.
upon any contract arising in this State for the hiring, lend-
ing or use of money or other commodity, except upon writ-
ten contracts, wherein by express agreement a rate of inter-
est not exceeding eight per cent. may be charged.    No per-
son or corporation lending or advancing money or other
commodity upon a greater rate of interest shall be allowed to
recover in any Court of this State any portion of the interest
so unlawfully charged; and the principal sum, amount or
value so lent or advanced without any interest, shall be
deemed and taken by the Courts of this State to be the true
legal debt or measure of damages * * to be recovered * *."
Rev. Stat., 1390.    This language of our statute has been
uniformly construed by our Courts to permit the charging
and receipt at the date of the loan, of the annual interest on
the principal loaned, no matter what might be the interest
allowed by law, whether seven or eight or ten per cent.    For
illustration, one lends $1,000 on twelve months, at eight per
cent. per annum; the interest for one year is $80; and when
the borrower receives his $1,000, it is diminished by $80,
taken by the lender as his interest.    Now, if this amount of
interest so taken out of the $1,000 is placed at interest at
eight per cent., it will yield $6.40—thus showing that the
borrower has not only received $920, when he is paying
interest on $1,000, but that the interest on the $80 which was
taken from his $1,000 as the annual interest, paid in advance,
yielded up to the maturity of his loan $6.40 as the interest.
We repeat, that all the decisions of our Courts sanction the
collection of the interest in advance of its accrual.    It may
have started with the banks in the first instance, but it is now

general.   If the interest may be deducted in cash, why may
not the contract stipulate for such deduction, and the bor-
rower settle the cash for interest by his note?   Thus, sup-
pose $1,000 is loaned and the borrower agrees to pay interest
in advance at eight per cent., which is $80, and the lender
agrees to allow the borrower to give him his separate note
for $80, at eight per cent. interest. .  Is not this legal?   Does
the actual payment of the annual interest in cash, in advance,
make any distinction in law between the illustrations?   We
cannot see it.   If, then, it is both legal to deduct the annual
interest in advance and on the date of the loan; and if it is
also legal to give a note for such annual interest in advance
at the same rate of interest the principal bears, why may not
the borrower and lender contract in the same instrument that
the interest shall be payable in advance, and if not so paid,
said annual interest shall bear interest until, paid at the rate
of eight per cent. per annum?   The case at bar presents this
very question, and it seems to us that the very recent case de-
cided by this Court, to wit: *Savings Bank* v. *Parrott,* 30 S.
C., 61, is decisive of this question.   It was decided in De-
cember, 1888, and held: That inasmuch as the note in that
case provided for annual interest at ten per cent., but did not
provide that the interest on the interest should run at ten per
cent., that it was usurious to charge such ten per cent. inter-
est on the interest.   It is very apparent that the only reason
given in this decision why the interest on the interest at ten
per cent. was not collectible, was the absence of such a stipu-
lation in the paper writing itself.   Our citizens have a right
to base their dealings with each other upon the declarations
of this Court, especially in the matter of the proper construc-
tion of our statute law.   In order that there may be no doubt
as to what *Bank* v. *Parrott, supra,* held, we will quote the
exact language on that point: "But did the bank have the
right to discount the interest at ten per cent. ?   We think
not.   The usury law before cited is very positive and per-
emptory, that 'no greater rate of interest than seven per cent.
shall be charged,' &c., except upon a written contract

wherein, by express agreement, a rate of interest not exceed-
ing ten per cent. may be charged, &c.    The note in this case
in writing did contain an 'express agreement' that the inter-
est should run to the maturity of the note at the rate of ten
per cent. per annum; *but we do not find in it any express
agreement that the interest on the interest should run at ten
per cent.*" (italics ours).    "The contract rather excludes
that idea; for it is to pay $2,000, with interest from date at
the rate of ten per cent., without any mention whatever of
interest on interest, which, in legal effect, was not to bear
interest at all until the maturity of the note, and then, as part
of the principal, to bear interest only at seven per cent.    *It
seems to us that in the absence of such 'express written agree-
ment,' the bank was without authority to charge a discount
of ten per cent. upon the interest,* and that such charge, at
least to the extent of three per cent., the excess over seven,
the lawful interest, was usurious" (italics ours).    In the case
at bar, Mrs. Newton has placed herself squarely upon this
construction of the statute as to usury, and has stipulated in
the express written agreement that the interest should bear
interest at eight per cent.

If this conclusion be correct, does it not dispose of all the
questions raised by the appeal?    If it was not usurious, the
tender would not hold, nor could there be any counter-claim
for excess of interest.    My opinion is that the judgment of
this Court should be: It is the judgment of this Court, that
the judgment of the Circuit Court be affirmed and that the
action be remanded to the Circuit Court.    But the members
of the Court are equally divided.    Therefore, under the Con-
stitution, the Circuit Court judgment stands affirmed.

MR. JUSTICE GARY *dissents.*

MR. JUSTICE JONES *concurring.*    If, as seems to have
been assumed on all sides, the contract in question be really
one providing for the payment of interest annually in ad-
vance, with first installmant of interest due at the execution
of the contract, and if not then paid, such interest shall bear

interest, I concur in the opinion of Mr. Justice Pope. But it seems to me the true construction of the contract has been missed. The parties do not stipulate to pay any interest in advance; they do stipulate that interest may be discounted—doubtless, to bring it within the principle announced in *Bank* v. *Parrott,* 30 S. C., 64—but there was no discounting in this case. As I understand, the whole principal sum specified was delivered to the defendant, and no interest was reserved by the lender or paid by the borrower at the time of the loan. The language of the note is, "With interest to be calculated from *this date* (November 21, 1890, the date of the contract), at the rate of eight per cent. per annum, both before and after maturity, discounted and payable annually on the first day in November in every year, including the present." By these terms interest does not begin to run until November 21st, 1890; therefore, it is impossible that "first day in November in every year, including the present," can mean November 1, 1890, because that date had passed, and antedated the period when it was expressly stipulated the interest should begin to run. The parties did not contemplate that the interest should be paid at the execution of the note, for the time of payment is expressly November 1st, and there is no suggestion that this was a mistake, and the time really meant was November 21. The term, "every year including the present," does not mean, in the light of the foregoing, the then calendar year, but it must be taken as meaning the interest year as provided in the note, viz: from November 21st, 1890, to November 21st, 1891. Hence the first installment of interest, by the terms of the contract, became due November 1, 1891, from which time such interest, in default of payment, should bear interest at eight per cent. Such a contract, it is not contended, would be usurious. I concur, therefore, in the result.

MR. CHIEF JUSTICE MCIVER *dissenting.* I cannot concur in the conclusion reached by Mr. Justice Pope in this case, as I am satisfied the contract sued on was usurious, and should

be so held. I cannot now spare the time for anything like an extended discussion of the question involved, and must content myself with indicating some of the grounds of my dissent. It is not, and cannot, be denied that, if the contract is enforced according to its terms, the practical result will be that the plaintiff will receive more than the interest allowed by law upon the amount of money which she loaned to the defendant; and that is exactly what the usury law forbids. While I do not, for a moment, suppose that either the plaintiff or her husband, who acted for her in this matter, had any intention to violate the law, or was actuated by any corrupt or improper motive in making this contract, yet that is not necessary to show that this was a usurious transaction. As is said in the case of *Thompson* v. *Nesbit,* 2 Rich., at page 75 : "No proof of a corrupt agreement is necessary, for the contract may be usurious, though the parties did not know that it was against law." But it cannot be denied that Mr. Newton intended and expected that his wife, under the terms of the contract, should and would realize something more than eight per cent. for the use of her money, for he substantially says so in his testimony; and this result he, no doubt, honestly believed he could accomplish without violating the usury laws. The question here is a purely legal question, as to the proper construction of the terms of the written contract. Inasmuch as it is quite clear that the practical result of this contract is to give the lender a greater rate of interest than that allowed by law, it would seem to follow necessarily that there must be something in the terms of the contract which provides for or permits such a result. If so, that is quite sufficient to render this contract usurious. It is contended, however, that the only provision in this contract, which enables the lender to receive interest at a greater rate than eight per cent., is that whereby the borrower stipulates for the payment of each year's interest, during the currency of the contract, in advance, and if not paid in advance, then that such interest shall bear interest at the same rate from the time it begins to accrue; and that it has

been held that the lender may require the interest in advance, without any violation of the usury laws. In 3 Pars. on Con., 131, it is said: "The practice of discounting bills or notes, by discounting from their face the interest for the whole time they had to run, began with our banks, and was soon so firmly established that it was sanctioned by the Courts, almost of necessity." The author goes on to say that this practice, originating with banking corporations, was gradually extended to individuals who loaned money. But he adds there is a strong disposition to limit this practice to paper having but a short time to run, and not to allow it to be applied to long loans or discounts. The author cites the case of *Marsh* v. *Martindale,* 3 Bos. & Pul., 154, to show that this practice was and should be confined to commercial transactions, and allowed only in the interests of trade. That case was decided as far back as 1802, and in delivering the opinion of the Court, Ld. Alvanley, C. J., emphasizes the necessity of confining the practice to such transactions, and refused to apply it to the case in hand, because the transaction amounted to a mere loan of money, and as such was usurious, even though the lender had no intention to violate the law. That case, it seems to me, is in principle very much like the case now under consideration. This practice on the part of banks may be sustained as legal upon another ground. Usually, if not universally, banks, by their charters, are authorized to discount bills and notes, and this necessarily carries with it the right to demand and receive the payment of interest in advance, for that is the very meaning of the word discount. As is said by Mr. Justice Story, in *Fleckner* v. *Bank of the United States,* 8 Wheat., at page 354: "It has always been supposed that an authority to discount, or make discounts, did, from the very force of the terms, necessarily include an authority to take the interest in advance. And this is not only the settled opinion among professional and commercial men, but stands approved by the soundest principles of legal construction. Indeed, we do not know in what other sense the word discount is to be in-

148          NEWTON v. WOODLEY.

terpreted." But there is another, and, as it seems to me, a still better reason, which has been suggested to me by a remark made by the Circuit Judge in his decree, why the taking of interest in advance will not make the transaction usurious. His language is as follows: "The truth is, the statute has not said at what time the hire must be paid, whether at the beginning, midway, or at the end of the year; it has only fixed the amount of the hire." This is true; and to apply this language practically, the statute does not forbid the taking of interest in advance; but simply fixes a limit to the amount which may be taken as interest, without making any provision whatever as to the time when such amount shall or may be paid; leaving that matter entirely to the agreement of the parties. If, therefore, the lender, when applied to for a loan of money for a stipulated time, chooses to exact from the borrower the payment of interest, at a lawful rate, on the amount loaned for the time agreed upon, and the borrower pays, in advance, such interest, there is nothing in such a transaction that would conflict with any provision of the usury law. But I cannot assent to the inference drawn by the Circuit Judge: "If it be lawful to pay the interest a year in advance, it must be lawful to *agree* to so pay it;" as that would be losing sight of the marked distinction between an executed and an executory transaction. When the lender asks the aid of the Court to enforce a contract for the payment of the money which he has loaned, the Court will closely scrutinize the terms of the contract, and if it is found to contain any provision by which the lender would be entitled to demand and receive interest to a greater amount than that allowed by law, such provision will taint the contract with usury, no matter how honest the intention of the lender may have been in making the contract. It is unquestionable that, under the terms of the contract, which the Court is here called upon to enforce, the borrower is required to pay interest on the sum loaned at a greater rate than that allowed by law; and this result is accomplished by the provision in the contract requiring the borrower to pay

interest on the amount of each year's interest, before a single cent of such interest has accrued. This case is very different from that of the very common contract, whereby a person promises to pay a specified sum of money—say, five years after the date of the contract—with interest from date payable annually, under which it is said (incorrectly, as I think,) that the practical result is that the creditor is entitled to receive a greater rate of interest on the original amount of the debt than that which is allowed by law. But it is not true that the creditor, under such a contract, becomes entitled to receive a greater rate of interest on the original amount of the debt than that which is allowed by law. Let us see. Suppose A. borrows from B. the sum of $1,000, and gives his note for that amount, payable three, five or ten years after date, with interest from date payable annually. Under such a contract the lender never would be entitled to receive interest on the sum loaned, $1,000, at a greater rate of interest than seven per cent., though he would become entitled to interest, at the same rate, upon the new debt of $70 from the date of its accrual; to wit: at the end of the first year, unless it was then paid; and so on from year to year, at the end of each year a new debt would accrue, which would be entitled to bear interest at the same rate, from the date of its accrual until it was paid. It is, therefore, incorrect to say that the practical result of such a contract is that the lender becomes entitled to receive interest on the sum loaned at a greater rate of interest than that allowed by law, although he does become entitled to interest on each *new debt* as it accrues, at the rate allowed by law. Such a contract cannot, therefore, be regarded as any violation of the usury law. But in the contract now under consideration, the borrower is required to pay, and promises to pay, interest on a debt *before* it has accrued. Such a promise would be without any consideration, unless it rests upon the promise to repay the principal sum loaned, with interest *as provided for in the contract,* and if so that would taint the whole contract with usury, as it would enable the lender to recover interest on the

sum loaned at a greater rate of interest than that allowed by law. The case of *Bank* v. *Parrott,* 30 S. C., 61, which is relied upon to sustain the judgment below, is not applicable to the question which this ·Court is now called upon to determine. I do not see that any such question was decided or ·even considered in that case. It was nothing but the ordinary case of a discount of a note by·a bank, and the vice in the transaction was that the bank charged discount at a greater rate than was allowed by law or provided for in the contract; and that was all that was practically decided in that case.

It seems to me, therefore, that in any view which may be taken, this contract, which is certainly novel in its form, as I have not been able to find any case, and none has been cited, in which such a contract has come before the Court for construction, must be regarded as usurious; and that to hold otherwise would practically emasculate the usury law, and enable lenders to receive greater rate of interest than that which is allowed by law.

Upon petition for rehearing, the following *Per Curiam* order was filed:

This Court being equally divided upon the question involved in this case, as appears by the opinions filed on the '23d day of March, 1899, the judgment of the Circuit Court stands affirmed, by virtue of the provisions of the Constitution of this State. The appellant now files his petition for a rehearing, for the purpose of having the question involved authoritatively determined by the Court *en banc,* as provided for in sec. 12 of art. V. of the Constitution. Inasmuch as it is not, and cannot be, claimed that any constitutional question is involved, the Circuit Judges cannot be called to the assistance of this Court, as provided for in the constitutional provision above cited, unless at least two of the Justices of this Court desire it, and as no such desire has been expressed, this would be decisive. We may add, however, in deference to the zeal and earnestness

with which this petition has been urged, that we see no ground for making this case an exception to the well settled rule in regard to petitions for a rehearing, viz: that unless some material fact or principle of law has been overlooked or disregarded, the petition will not be granted. This salutary rule is frankly conceded by counsel for petitioner to be necessary to prevent delays in the administration of justice, and to ensure the prompt determination of controversies between citizens; but they seek to take this case out of the operation of this rule by the following considerations: 1st. Because of the grave public importance of the question involved, involving not merely the interests of the parties to this case, but also the interests of the public generally. 2d. Because the question involved does not grow out of the testimony adduced in this case, but arises out of the construction of a written instrument in its relation to the statute forbidding the taking of usury. 3d. Because "in the brief space of time in which counsel agreed and undertook to present the appeal, it was done in an unsatisfactory and perfunctory manner," and that for this reason the distinction in questions of usury, between contracts executed and executory, was not fully discussed by counsel "in their hurried argument," and hence such distinction was overlooked by the Court.

As to the first and second of these considerations, it is sufficient to say, that they have been found in many cases, and, no doubt, will be found in many other cases; and to allow such considerations the force of qualifying the well settled rule, would, to a great extent, emasculate the rule, and defeat its salutary effect in preventing delays in the administration of justice.

As to the third consideration, it seems to us that counsel fail to do themselves justice in characterizing their argument as "perfunctory;" but, in addition to this, we are able to say that the case was thoroughly and carefully considered, and the point, as to the distinction between contracts executed and executory, was not only not overlooked but was expressly referred to in one of the opinions. Inasmuch as it is

claimed that this case presents an exception to the general rule, we have departed from our usual custom in disposing of petitions for a rehearing, solely for the purpose of indicating the reasons why we do not consider that this case can be taken out of the operation of the general rule; and after a careful consideration of the whole matter, we are of opinion that there is no ground for a rehearing.

It is, therefore, ordered, that the petition be dismissed, and that the stay of the remittitur heretofore granted be revoked.