## BURNETT v. SOUTHERN RY.

1. FENCES—RAILROADS—CATTLE GUARDS.—A grantee of land on which a line of fence ran across a railroad, who repaired the fence, has the right to invoke the provisions of Rev. Stat. 1729 and 1730, against a purchaser and operator of such railroad for its failure to maintain and keep in repair cattle guards where such fence crosses the railroad. Said sections also refer to fences built at any time after the construction of the railroad.

2. IBID.—IBID.—IBID.—The terms of the statute, "a line of railroad crossing a line of fence," means a fence built as near the railroad track as it can be built for obstacles and the railroad right of way.

3. EVIDENCE—OPINION.—When a non-expert witness states the facts upon which he bases his opinion, he may give his opinion as evidence.

4. AN ACTION IS NOT PENDING after order dismissing the complaint on demurrer.

5. APPEAL.—CONSTITUTIONAL QUESTIONS not raised in or passed on by Circuit Court in law case will not be considered on appeal.

Before GAGE, J., Edgefield, March, 1901.    Affirmed.

Action by O. O. Burnett against Southern Railway Co. From judgment for plaintiff, defendant appeals.

*Messrs. B. L. Abney* and *E. M. Thomson,* for appellant. The latter cites: *Penal statutes must be strictly construed:* 18 S. C., 305; 22 S. C., 201; 24 S. C., 109; 26 S. C., 294; 8 S. C., 70; 3 Hill, 99; 1 Bail., 19; Sutherland Stat. Const., 444; 177 U. S., 310; 12 A. & E. Corp. Cas., 281; 3 L. R. A., 224. *Plaintiff must make out title:* 40 S. C., 517; *Busbey* v. *R. R.,* 45 S. C. *As to the question of sufficiency of*

*the cattle guards opinion evidence is not admissible:* 33 Kan., 404; 7 Hun., 571; Rog. Exp. Test., 10; 26 Kan., 72; 33 Cal., 236; 19 S. C., 68; 59 S. C., 315; 61 S. C., 337. *Error to instruct jury that they could include their own knowledge in arriving at a conclusion:* 44 S. C., 333; 30 S. C., 136; 29 S. C., 233; 29 L. R. A., 468; 91 Ga., 617; 1 Gray, 529; 36 Neb., 17, 708.

*Mr. J. W. DeVore, contra* (oral argument).

January 20, 1902. The opinion of the Court was delivered by

MR. JUSTICE GARY. This action arose under sections 1729 and 1730 of the Revised Statutes, which are as follows: "Section 1729. The several railroad companies whose line of railroad lies wholly or partly in this State are hereby required to construct and keep in repair an adequate stock guard or cattle gap at every point where the line of said railroad of any such company crosses, or may hereafter cross, the line of any fence in this State. Section 1730. For every violation of the preceding section the railroad company so violating it shall pay to the owner or owners of the fence upon the line of which said stock guard or cattle gap should have been construted and kept in repair, the sum of $100, to be recovered by action in the Court of Common Pleas for the county in which said stock guard or cattle gap should have been constructed and kept in repair."

The complaint (omitting the formal portions thereof) alleges:

"3. That the line of railroad now operated and run by the defendant, the Southern Railway Company, from the town of Edgefield, in the above county and State, to the city of Aiken, in the county of Aiken, State of South Carolina, crosses a line of fence on the premises and tract of land belonging to the plaintiff, about two miles from said town of Edgefield.

"4. That said line of fence belongs to and was built by

the plaintiff, O. O. Burnett, for the purpose of enclosing the east boundary of a lane which was made and constructed to enable the plaintiff to drive his cattle and stock to and from his pasture, and for that purpose it was necessary for the plaintiff to build said line of fence.

"5. That without said line of fence the plaintiff could not utilize his pasture lands, which are situated and lie on the opposite side of defendant's line of railroad from plaintiff's house.

"6. That the defendant has not constructed an adequate stock guard or cattle gap at the point where its line of railroad crosses the line of fence above described, and has not kept the same in repair.

"7. That the defendant has not only failed but refused to construct an adequate stock guard or cattle gap and keep the same in repair.

"8. That by reason of the defendant's violation of the statute law in not constructing and keeping in repair an adequate stock guard or cattle gap at said point on the line of fence above described, the said defendant is liable to the plaintiff in the sum of $100."

The defendant's answer was, in effect, a general denial and the defense that another action was pending in the same Court, between the same parties and for the same cause of action. The jury rendered a verdict in favor of the plaintiff for $100.

The defendant appealed upon the following exceptions:

"1. Excepts because the presiding Judge erred in overruling the defendant's motion for a nonsuit, which was made upon the following grounds, to wit: (1) That there was no testimony showing or tending to show that the said line of fence was in existence at the time the line of railroad was constructed and built, but the proof was positive to the contrary; hence the line of railroad did not 'cross' the line of fence within the meaning of the statute. (2) That the testimony showing that the line of fence stopped some 12 or 14 feet from the line of railroad, and the statute requiring the

cattle guard to be constructed 'at the point' where the line of railroad 'crosses' the line of fence, plaintiff had failed to make out a case. (3) That plaintiff had failed to show any title in himself to the land upon which the line of fence in question was built. (4) That plaintiff's testimony showing that he was not the owner of the line of fence at the time the line of railroad was constructed and built, this plaintiff could not maintain this action, as the statute gives the penalty only to the owner of the line of fence at the time the duty to construct the cattle guard arises. And that the whole of this duty to construct and keep in repair an adequate stock guard under the testimony, if owing to any one, was to plaintiff's predecessor, Mrs. M. A. Tompkins, the owner of the land and fence at the time the duty of the railroad company, under the statute, arose. (5) That the testimony showing that the defendant company was not the owner at the time of the railroad company which constructed and built the line of railroad at the point in question, there was no duty owing by defendant to the plaintiff.

"2. Excepts because the presiding Judge erred in allowing plaintiff's witness, J. W. Hill, to testify over the objection of the defendant, whether or not the cattle gap in question was an adequate cattle gap; whereas, it is submitted that such testimony being only the opinion of the witness, was inadmissible and incompetent; that his testimony should have been restricted to the facts within his knowledge relating to the construction and condition of such cattle gap, and left the jury to find as to its sufficiency or adequacy.

"3. Excepts because the presiding Judge erred in allowing plaintiff's witness, J. W. Hill, to testify over defendant's objection, in answer to the question: 'From your knowledge of what a sufficiently adequate cattle gap is, and from your knowledge of this cattle gap, would you say that was sufficiently adequate to stop them from crossing?' For the reasons stated in exception 2, *supra.*

"4. Excepts because the presiding Judge erred in asking and in allowing plaintiff's witness, J. W. Hill, to testify in

answer thereto, if he knew what a cattle guard was; whereas, it is submitted that if the term under said statute was capable of being legally defined, it should have been so defined for the jury by the presiding Judge, otherwise the statute should have been declared inoperative, and the testimony as to the meaning of said term should not have been thus admitted to the defendant's prejudice.

"5. Excepts because the presiding Judge erred in refusing the motion of defendant's attorney to strike out the testimony of the plaintiff's witness, J. W. Hill, as an expert as to the sufficiency of the cattle guard in question; whereas, it is submitted that it having appeared from the testimony of said witness that he was not an expert, his opinion was incompetent and inadmissible evidence, for the reasons stated in exception 2, *supra,* and was to defendant's prejudice.

"6. Excepts because the presiding Judge erred in instructing the jury at the close of plaintiff's testimony as follows: 'Now I wish to instruct you that you must form your opinion as to whether the cattle guard in this case, if there was one, was an adequate one, and you must come to that conclusion not so much from any witnesses' testimony, whether it is inadequate or not, but from the descriptions in your hearing of the physical features of the cattle guard, whether or not that is what the law describes as an adequate cattle guard; and I think that perhaps you should in coming to your conclusion, be governed, first, by the description of the physical features of the cattle guard and by your own knowledge of such matters rather than by the opinion of any of the witnesses;' whereas, it is submitted that the jury should have been restricted to the facts as testified to by the witnesses relating to the construction and condition of such cattle guard, and from such find a verdict as to its adequacy, and should not have been instructed to reach such verdict from their own knowledge of such matters.

"7. Excepts because the presiding Judge erred in refusing defendant's first request to charge, which was as follows: '(1) That the statute under which this action is

brought only applies where the line of fence is in existence when the railroad is constructed. The statute reads, where the line of said railroad "crosses or may hereafter cross" the line of any fence. The fence must, therefore, be there in existence when the railroad is constructed for the line of railroad to cross as required by the statute, or else where a line is already constructed and a new railroad is constructed across it.' It being submitted that said request contained a correct construction of the statute under which the action is brought, and should have been charged.

"8. Excepts because the presiding Judge erred in refusing defendant's second request to charge, which was as follows: '(2) Only the railroad company which should have constructed an adequate stock guard at the point where it crosses the line of fence which is then in existence, is liable under this statute to the owner of the line of fence at the time the construction should have been made.' Said request, it is submitted, contained a correct construction of said statute, and should have been charged.

"9. Excepts because the presiding Judge erred in refusing defendant's third request to charge, which was as follows: '(3) So if you find that the defendant in this case is the successor of the railroad company which should have constructed an adequate stock guard at the point in question, then you cannot hold this defendant liable, for only the original company whose line of railroad crossed the line of fence is liable for failure to construct an adequate stock guard.' Said request as submitted, contained a correct construction of said statute made applicable to the case, and should have been charged.

"10. Excepts because the presiding Judge erred in refusing defendant's fourth request to charge, which was as follows: '(4) The penalty is for failure to construct and keep in repair an adequate stock guard, as provided by the statute. The defendant cannot be held liable in this case if you find that it is the successor of the railroad company, whose duty it was to construct an adequate stock guard. Nor can it be

held liable to any other than the owner of the land on which the fence is located when the railroad is built. If such owner conveys, the grantee cannot recover the penalty provided.' It is submitted that said request contained a correct construction of said statute, was applicable to the case and should have been charged.

"11. Excepts because the presiding Judge erred in modifying defendant's sixth request to charge, which was as follows: '(6) You must find that the plaintiff has a line of fence which the railroad track crosses (if wing fences are in existence not built by plaintiff and owned by him, he cannot recover). The plaintiff, to recover said penalty, must have a line of fence owned by him, which the railroad track actually crosses.' The same was modified by omitting the sentence: 'If wing fences are in existence not built by plaintiff and owned by him, he cannot recover;' and was further modified by changing the words 'railroad track' in the last sentence to the 'line of railroad,' so that as modified and charged it read: 'The plaintiff, to recover said penalty, must have a line of fence owned by him which the line of railroad actually crosses.' The error consists, first, in omitting the sentence above quoted, and thus indicating to the jury that plaintiff was not required to be the owner of and to have built wing fences, if such existed, between his line of fence and the line of railroad or railroad track; whereas, it is submitted that if there were wing fences in existence running out from the railroad track, not built and owned by the plaintiff, he could not recover, because the line of railroad would not cross a line of fence owned by him. And the second modification was erroneous in indicating to the jury that there was a difference in 'line of railroad,' as used in said statute, and the railroad track, thus defeating the object of the request in this particular, which was to obtain a construction of the words 'line of railroad,' applying the same to the case at bar; and further, by the two modifications, it left the jury to infer that wing fences were or might me included in 'line of railroad.'

"12. Excepts because the presiding Judge erred in not holding that from the records introduced in evidence by defendant that there was at the commencement of this action and still was another action pending in the same Court between the same parties as in this action, and for the same cause as set forth in the complaint herein; for the reason, it is submitted, that the summons and complaint in the action commenced February 6th, 1899, had never been dismissed, and that action was and is still pending.

"13. Excepts because the statute under which this action is brought, to wit: Sections 1729 and 1730, Revised Statutes 1893, is unconstitutional, null and void, being in contravention of article I., section 5, of the Constitution of the State of South Carolina, and also of the Fourteenth Amendment to the Constitution of the United States (section I.), in that it is a taking of property (money) by way of expenses, without due process of law.

"14. Excepts because the said statute (sections 1729 and 1730, Revised Statutes of South Carolina 1893), is inoperative and without force and effect, being so uncertain and ambiguous that it is impossible to ascertain the meaning of the legislature in enacting the same, particularly as regards the exact duty sought to be imposed upon the railroad companies by defining what a cattle guard is, where the same commences and where it ends, and in failing to define what would be an adequate one."

The main question presented by the appeal involves the construction of the foregoing sections of the Revised Statutes, which must be made with reference to the testimony; so much of which, as is pertinent, is as follows (testimony of O. O. Burnett, plaintiff) : "You say in your complaint that you built that fence, and you bought your land in 1892—how soon after '92 did you build that fence? The fence—the lane was there before I bought it, and I repaired it. You say you built that fence? It was there before; ran down to the pasture—the pasture was on the same side of the road as it is now. Was the railroad there when you

built that fence? Yes, sir, when I repaired it. That was subsequent to '92? Yes, sir. That fence just came down and stopped on the side next to your house, didn't it? Fence on both sides. That fence stopped about the right of way? Yes, sir; couldn't build it over the railroad. That fence did stop out there on the right of way? Mr. DeVore: Do you know that of your own knowledge? Mr. Thomson: I am cross-examining him. Now you say it did stop out there, but didn't go up to the railroad track? No, sir; didn't go up to the railroad track. Sort of ditch cut down there? Considerable embankment there. On the diagram on the east side that is in controversy, there is a little ditch coming from your house? · It runs along the side of the railroad. You mean the ditch is here (showing diagram to witness)? Yes, sir. That is the fence that you referred to in your testimony in chief? No, sir, the ditch is not the fence I referred to. I have got a fence all the way from my house to the railroad, it connects now—— I am not talking about now—you are talking about now; I am talking about when the suit was commenced. The fence came to where the steep embankment is twelve or fourteen feet perpendicular, and no cattle would go over that at all, but the third section of the cattle guard connected with that embankment; there were three sections to the cattle guard. Where did you get the third from? You might as well call the panel a cattle guard as to call that right on the railroad a cattle guard. What third section do you refer to? The plank fence on each side, that in the middle of the track wouldn't be worth anything without a third section. Your fence stopped how many feet, twelve or fourteen feet from the track? Connected with that panel that the railroad put there, that is part of the cattle guard. I couldn't build that fence down on the track; I ran my fence as far as I could run it. The fence proper is twelve or fourteen feet from the track connected with the third section of the cattle guard. Connected everywhere it could be connected. * * * Do you know when that railroad was built? No, sir, I don't; was

not living in this country. It was already there when you
repaired that fence? Yes, sir. Was there any cattle guard
there when you built that fence? No, sir. When was one
put there? In '99, I believe. What time in '99. The first
cattle guard was put there in May, 1899? I think so * * *
The Southern was not operating that road when you built
that fence? No, sir. It was the Carolina and Cumberland
Gap? Yes, sir. * * * Your deed shows; but I will ask
you: Mrs. Margaret Ann Tompkins owned that land before
you did? Yes, sir. When she bought it, the railroad was
there, and there was no cattle guard there when you bought
it? No, there was not. Now, Mr. Burnett, don't you
know when you bought that land that Mrs. Margaret Ann
Tompkins had made a deed of 100 feet to the railroad on
each side? No, sir, I didn't know it. But that is a fact?
Yes, sir."

The record contains the following statement: "It was
agreed between counsel, and so noted by the stenographer,
that the Carolina and Cumberland Gap Railroad Company
deeded the line of railroad in question to the Southern Rail-
way Company on August 1, 1898, deed duly recorded, and
that Southern Railway Company took possession under said
deed and has been operating it since.".

The act of 1880 (17 Stat., 328,) entitled "An act to re-
quire all railroad companies in this State to construct and
keep in repair an adequate stock guard or cattle gap, at
every point where the line of railroad of any such
company crosses the line of any fence in this
State," contains the two sections hereinbefore men-
tioned, except the words "or may hereafter cross" are
omitted. These words were inserted in 1882 and these
sections appear in the Revised Statutes of that year, as
sections 1536 and 1537, and are identical with sections 1729
and 1730 of the present Revised Statutes. The appellant
contends that the statute must be construed to mean that the
line of railroad must cross the line of fence, and that the line
of fence would, therefore, have to be in existence when the

line of railroad is constructed or built. If this was the intention of the statute, then it was useless to insert the words "or may hereafter cross." In construing the statute, the Court must, if possible, give effect to all its provisions. The defendant had the right of way over the plaintiff's land, but the fee was in him and subject only to the special uses for which it was incorporated. The plaintiff remained the owner thereof, and the defendant had no right in, or power over, the land other than such as might be within the particular purpose for which the right of way was acquired. Rev. Stat., sec. 1750. The right of way of the defendant prevented him from running his fence across the railroad track. It was the intention of the statute that the owner of the fence should have the use and enjoyment of his property to the fullest extent compatible with the rights of the defendant. As he could not construct his fence across the railroad track, the law required the railroad corporation to aid him in the use and enjoyment of his rights by "constructing and keeping in repair an adequate stock guard or cattle gap at every point where the line of said railroad of any such company crosses, or may hereafter cross, the line of any fence in this State." The plaintiff, as the grantee of the land, had the right to the protection and benefit of the statute, against the defendant, and it cannot escape liability by reason of the fact that the Carolina and Cumberland Gap Railway Company formerly owned and operated the said line. The statute refers not only to fences in existence, when the railroad constructs its line, but to fences built at any time thereafter. These views dispose of the 1st, 4th and 5th subdivisions of the first exception and of the exceptions numbered 7, 8, 9 and 10.

*Subdivision 2 of exception 1.* When the statute speaks of a line of railroad crossing a line of fence, it does not mean a physical crossing of the fence by the railroad track but a crossing of the line, where it was the intention to build the fence, but for obstacles and the defendant's right of way. It is impossible to lay down a rule governing

all cases.   In this case the testimony shows that the fence was built as far as possible.

*Subdivision 3 of exception 1.*   It does not allege in what respect the plaintiff failed to show title, but waiving this objection, the record shows that when the plaintiff attempted to prove his title, the defendant objected to the testimony on the ground that it was parol, whereupon the plaintiff introduced in evidence the deeds under which he held the land.

*Exception 2.*   The witness stated the grounds upon which he based his opinion which thereby rendered it competent as testimony.   *Harmon* v. *R. R. Co.*, 32 S. C., 129, and cases cited in *Easler* v. *Ry. Co.*, 59 S. C., 311.

*Exception 3.*   This exception is disposed of by what has just been said.

*Exception 4.*   The testimony tended to show the knowledge the witness had of the subject, and thus enabled the jury to say what importance should be attached to his evidence.   This certainly was not objectionable.

*Exception 5.*   This exception, for reasons already stated, must be overruled.

*Exception 6.*   We do not think the Circuit Judge intended that the jury should consider any facts not in evidence, but should use common sense and reason in reaching a conclusion.

*Exception 11.*   There was no testimony showing that the plaintiff was not the owner of the fence, the line of which crossed the line of the railroad, and it made no difference whether the wings were built by him or the defendant.   As to the second objection, we fail to see wherein the defendant was prejudiced, as the Circuit Judge charged the law as laid down by the statute.

*Exception 12.*   The order of Judge Aldrich, was as follows: "Upon hearing the demurrer to the amended complaint in this action, upon the ground that two causes of action each for a statutory penalty have been improperly united, it is ordered, adjudged and decreed,

that the demurrer be sustained and the complaint dismissed. James Aldrich, presiding Judge." As the complaint in the former action was *dismissed* before this action was commenced, it cannot be successfully contended that it was still pending.

*Exceptions 13 and 14.* The questions presented by these exceptions were not raised in the Circuit Court, and as there has been no ruling upon them by that Court, they are not properly before us for consideration.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.