8713

NEXSEN v. WARD.

1. THE CODES contain the only general statutory laws of the State in force.

2. AGRICULTURAL LIEN.—A LANDLORD has an agricultural lien on his tenant's crops for advancement made to him during the year, without a written contract, but to preserve the priority of the lien against subsequent creditors and purchasers it must be written and indexed.

*The* CHIEF JUSTICE, ASSOCIATE JUSTICE WATTS *and* JUDGES MEMMINGER, WILSON, FRANK B. GARY *and* SPAIN *dissent.*

Before Shipp, J., Williamsburg, January, 1913. Reversed.

Action by J. L. Nexsen against R. E. Ward and Atlantic Coast Line R. R. Co. Plaintiff appeals.

*Mr. LeRoy Lee,* for appellant, cites: 21 S. C. 51; 68 S. C. 140; 52 S. C. 156; 8 S. C. 63; 18 S. C. 510; 79 S. C. 103; 19 Ency. 24.

*Messrs. Kelly & Hinds,* contra, cite: 58 L. R. A. 878; 8 Pet. 691.

On account of a division of the Court on a constitutional question, this case was argued before the Court *en banc.*

January 8, 1914. The opinion of the Court was delivered by

Mr. Justice Hydrick. In 1912, plaintiff rented defendant a farm and advanced him fertilizer of the value of $100.91 to make his crop. Defendant refused to pay for the fertilizer, and was disposing of the crop when plaintiff obtained a warrant from the clerk of the Circuit Court, and had two bales of cotton seized, claiming that he had a statutory lien on it for his debt. On motion of defendant, the Court set aside the warrant, on the ground that the statutes do not give the landlord a lien for advances to his tenant, unless the same is in writing. This appeal questions that ruling.

Some apparent conflicts in the provisions of the statutes, as they appear in the Codes of 1882, 1902, and 1912, disappear when we consider the original enactments, and the order in time and purpose of their adoption. The agricultural lien law was adopted piecemeal, and it has been frequently amended, so that a careful study of its history is

necessary to reach a correct conclusion upon the question for decision.

In 1866 (13 Stat. 380), "any person" who advanced supplies to one engaged in the cultivation of the soil to make his crop was given a preferred lien thereon, provided the agreement was in writing. In 1869 (14 Stat. 229), laborers were given a prior lien on the crops for their wages. The statute did not specifically require that the contract should be in writing, but in *Hair* v. *Blease,* 8 S. C. 63, the Court construed the statute to require that the contract should be in writing to have the effect of giving the laborer a lien. By act, approved March 4, 1878 (16 Stat. 410), which was in effect a re-enactment of the act of 1866, with amendments, landlords were given a prior and preferred lien for rent to the extent of one-third of the crops to be valid without recording or filing, and the act further provided that every lien for advances and for rent, when the agreement was for more than one-third of the crop, should be filed and indexed in the office of the register of mesne conveyances. By act, approved December 23, 1878 (16 Stat. 743), entitled "An act for the further protection of landlords in the collection of moneys due by tenants for rents and advances," the landlord's lien for rent was extended to all crops raised on the leased land, whether by his tenants or other persons. Section 2 of that act reads: "That, subject to the liens provided for in said act (the act of March 4, 1878), and enforcible in the same way as therein provided. the landlords shall have a lien on all the crops raised by the tenant for all advances made by the landlord during the year."

Although the statute did not provide in terms that the landlord's lien for advances need not be in writing, it is clear that that was the intention of the legislature, because, otherwise, the section is meaningless, and had no force or effect whatever, since, under the prior act of March 4, 1878, the landlord, being included in the general class, "any person," could have had a lien for advances by making an

agreement therefor in writing. The rules of construction require that this section must have some meaning, and it can be given no other. The subsequent act of 1880 (17 Stat. 413) shows also that the legislature gave it that construction, because that act required that all liens therein provided for, except the landlord's lien for rent, should be in writing —a requirement which was useless and meaningless, unless section 2, *supra,* had the effect of giving the landlord a lien for advances without writing, because there was no other provision in the statutes for a lien without writing.

This brings us to the act of 1880, *supra,* by which section 6 of the act of March 4, 1878, was amended. The body of the section, as amended, may be passed over as not affecting the question under consideration, but a proviso was added to it, which reads: *"Provided,* That all liens herein provided for shall be in writing, except the landlord's lien for rent, when the amount does not exceed one-third of the crop: *Provided, further,* That so much of any act or acts as are inconsistent with the provisions of this act be, and the same is hereby, repealed." As we have already shown, this proviso was intended to repeal section 2 of the act of December 23, 1878, above quoted.

The statutes above referred to were codified in the General Statutes of 1882, in chapter XCV, headed, "Of Chattel Mortgages and Liens," and under the subhead, "Liens on Crops," in the following sections. Only the general purport of sections 2397 and 2304 is given, because the remainder of these sections throws no light on the question under consideration.

Section 2397 gives a *preferred* lien to "any person" making advances, provided it is in writing.

Section 2399 reads as follows: "Each landlord leasing lands for agricultural purposes shall have a *prior and preferred* lien for rent to the extent of all crops raised on the lands leased by him, whether the same be raised by the tenant or other persons, and enforcible in the same manner as

liens for advances, which said lien shall be valid without recording or filing: *Provided, That, subject to the liens herein provided for and enforcible in the same way, the landlord shall have a lien on all the crops raised by the tenant for all advances made by the landlord during the year: Provided, further,* Every lien for advances and for rent, when the agreement is for more than one-third of the crop, shall be indexed in the office of the register of mesne conveyances of the county in which the lienor resides," etc. (The remainder of the section relates to the details of indexing, and is not pertinent.)

Section 2400. "All liens herein provided for shall be in writing, except the landlord's lien for rent when the amount does not exceed one-third of the crop."

Section 2403 gives laborers a *prior* lien on the crops for their wages.

It appears that section 2 of the act of December 23, 1878, was codified in the italicized part of section 2399, *supra.* It also appears, upon the face of these sections, that they are in conflict, in that the person who makes advances, the landlord and the laborer, each appears to have a prior lien on the crops. This led to the passage of the act of 1885 (19 Stat. 146), entitled "An act to prescribe the priorities of certain statutory liens."

Section 1. "That from and after the passage of this act the landlord shall have a lien upon the crops of his tenant for his rent in preference to all other liens. That laborers who assist in making any crop shall have a lien thereon to the extent of the amount due them for such labor next in priority to the landlord, and as between such laborers there shall be no preference. That all other liens for agricultural supplies shall be paid next after the satisfaction of the liens of the landlord and laborers, and shall rank in other respects as they do now under existing laws."

Section 2. "That no writing or recording shall be necessary to create the liens of the landlord, but such lien shall

exist from the date of the contract, whether the same be in writing or verbal."

Section 3 repeals all inconsistent acts.

It is contended that the use of the word "liens" in section 2 of the act of 1885 indicates an intention to include both the landlord's lien for rent and his lien for advances. Several considerations seem to show that the word "liens" was unintentionally substituted for the word "lien" by a slip of the pen or an error of the printer. The statute had made direct reference to only one lien of the landlord, and the word "liens" is immediately followed by the words "such lien," showing that both words should be plural or both singular. The headnote to the section reads: "Lien for rent need not be in writing." Of course, that is only the construction of the Code Commissioner of that time, and is of no consequence, except that it gives us the benefit of a contemporaneous construction. Of more consequence is the fact that, as the lien law then stood, section 2400 of the General Statutes required all liens to be in writing, except the landlord's lien for rent, and it is hardly conceivable that the legislature would have undertaken to repeal such an unequivocal declaration of its intention by such an inconclusive circumstance as the mere use of the plural word "liens" in the section above quoted. Finally, that section was codified in the first italicized sentence in section 3057 of the Civil Code of 1902, which is copied below, and the word "lien" is there used, which is, I think, conclusive of the question. For these reasons, I do not think that the act of 1885 was intended to have the effect of giving the landlord a lien for advances without writing.

But since that time, the legislature has made material changes in the statutes, the necessary effect of which, I think, accomplishes that result.

Section 5, of article VI, of the Constitution of 1895, provided for the codification of all the general statutes of the State every ten years, and it was therein provided further

that the Codes adopted thereunder shall be declared "to be the only general statutory law of the State."

In pursuance of that provision, the Code of 1902 was adopted, and declared by the legislature "to be the only general statutory law of the State."

The inevitable consequence of that enactment and declaration is to repeal all general statutory laws which were not included in the Code; because, if the Code contains the *only* general statutory law of the State, of course, there can be none other. To say that a general law which has been left out of the Code is, nevertheless, still of force, is to destroy the effect of the declaration. We are not at liberty to say that the lawmakers did not mean what they said in plain and unmistakable language.

It is equally clear that any matter, which was not, theretofore, a part of the general statutory law of the State, but which was introduced into the Code and adopted with it, became by virtue of that adoption, a part of the general statutory law of the State. To hold otherwise would be to override the legislative declaration. In *Park v. Laurens Cotton Mills,* 75 S. C. 560, 56 S. E. 234, it was held that a statute, which was unconstitutional, because of a defective title, became a part of the law of the State when adopted as a part of the Code. It follows, therefore, that any matter which the legislature may constitutionally enact as law becomes such when it has been inserted in the Code, and adopted with it. In *Central etc. R. Co. v. State,* 104 Ga. 831, 42 L. R. A. 518, the Supreme Court of Georgia had the same question under consideration. The Court said: "It would be difficult to conceive how language could more clearly or forcibly express the real intent of the legislature in this matter than the words used in the title and body of this act. If it means anything, it means a purpose of the legislature to adopt and make of force a code of laws, *and hence to breathe into every provision in that code the vitality of a legislative enactment.* Any other construction would ascribe

to the legislature the folly of declaring, in effect: 'We adopt as law in this Code everything which would be law anyway without further sanction.' " (Italics added.) Again, the Court said: "It is further contended by plaintiff in error that the embodiment in the Code of an unconstitutional law is an error which the legislature did not intend to sanction by its act adopting the Code. If the infirmity of the act relates to matter upon which the Constitution prohibits any legislation at all, of course, the act would be void, it matters not where found, nor how often adopted. Where, however, the defect is not inherent in the subject matter itself, but relates simply to its manner of passage under a defective title, it is, of course, permissible for the legislature to re-enact the measure under a proper title."

If this be not so, the adoption of the Code failed to accomplish the purpose thereby intended, which was to bring together in a systematized body all the general statutory law of the State of force at the time of its adoption, so that the people could rely upon it with certainty for their guidance.

It is true that mischief may result from the omission of valid statutes, or the insertion of invalid ones, or of other matter not theretofore a part of the statute law, whether done inadvertently or designedly. But that is a matter for legislative, rather than judicial, consideration. The Constitution and statutes have guarded against such alterations by requiring the report of the Code Commissioner to be printed and laid on the desks of the members of the General Assembly a year before it can be taken up for legislative action. The intent necessarily to be implied is that each member shall have ample time and opportunity to consider it carefully, and see that it contains all that it should, and nothing that it should not. The Court must assume that the members have done their duty. Moreover, the legislature meets annually, and errors and omissions may be readily corrected.

Having shown that we must look to the Code alone for the general statutes of the State at the time of its adoption,

it follows that we must construe it just as any other statute, and give effect to all of its provisions. The rule sustained by all the Courts requires that every word, clause, and sentence must be given some meaning, force, and effect, if it can be done by any reasonable construction.

Coming, then, to the Code of 1902, we find the provisions of all the statutes hereinbefore referred to incorporated therein and re-enacted, except section 2400 of the General Statutes of 1882, which provided that all liens on crops should be in writing, except the landlord's lien for rent. We have no way of knowing—we can not inquire—whether the omission was accidental or intentional. But according to the well settled rule above stated, we must give effect to the statute and to every part of it, as it stood without that provision.

Section 3057 reads: "Every landlord leasing land for agricultural purposes shall have a prior and preferred lien for his rent to the extent of all the crops raised on the lands leased by him, whether the same be raised by the tenant or other person. *No writing or recording shall be necessary to create such lien, but it shall exist from the date of the contract, whether the same be in writing or verbal,* and the landlord shall have the right to enforce such lien in the same manner, upon the same conditions, and subject to the same restrictions as are provided in this article for persons making advances for agricultural purposes. *And, subject to the liens hereinafter provided for, and enforcible in the same way, the landlord shall have a lien on all the crops raised by the tenant for all advances made by the landlord to such tenant during the year."* (Italics added.)

Section 3059 is the same as section 2397 in the General Statutes of 1882, and provides that "any person" making advances shall have a lien, provided it be in writing.

For the reasons which have already been stated, the last sentence italicized above must be given the same construc-

tion which it was originally intended to have—that the landlord shall have a lien for his advances without an agreement therefor in writing—because, if it is not given that construction, it means nothing, and we convict the legislature of the folly of writing into the Code a provision which has no meaning, force, or effect whatever, since, without that provision, the landlord could have obtained a lien for his advances by making an agreement therefor in writing, under section 3059.

But this is not all. In 1906 (25 Stat. 83) the legislature amended section 3057, *supra,* so as to give the landlord "and his assigns" the right to enforce not only his lien for rent provided for in the first sentence of that section, but also his lien for advances provided for in the last sentence thereof. We must infer from this the positive intention that that part of the section should be as effective as the other; because, otherwise, it would have been omitted. The section was again re-enacted. without change, in the Civil Code of 1912, being section 4162 thereof.

When a statute creates a lien, unless the intention is expressed, or should be inferred from the context, that it shall be in writing, it is valid without a contract in writing. In *Harby* v. *Wells,* 52 S. C. 156, 29 S. E. 563, this Court held that, under the statute which gives the owner of a stock horse a lien on the issue for the service fee, he had such a lien, even though no contract in writing was made therefor. The statute merely declared that the owner of such horse, "having a claim by contract against the owner of any mare * * * shall have a prior lien on the issue of such mare," etc. The Court held that the contract need not be in writing to entitle the owner of the horse to a lien. To the same effect is *State* v. *Lanier,* 79 S. C. 103, 60 S. E. 225.

It is argued that, as the statute expressly provided that the landlord should have a lien for his rent without writing, we must infer the intention that he should have no other without writing, on the principle, *expressio unius est*

*exclusio alterius.* That argument is not without force, but it is only an inference which is not sufficiently conclusive to compel the complete destruction of the words of the section which we have italicized, because the provision in question is not so inconsistent with them that they can not both stand together, and both be given some meaning, force, and effect. Moreover, when the circumstances and dates of enactment of the several statutes are considered, the reason why it was specifically provided in the act of March 4, 1878. that the landlord's lien for rent need not be in writing is apparent, and destroys the force of the argument.

It is also suggested that this construction is not consistent with the provisions of section 3061, that "every lien for advances shall be indexed," etc. There are two answers to that objection: First, the requirement of recording is intended only for the benefit of subsequent creditors or purchasers, while the landlord's unwritten lien for advances is expressly made subject to other liens. Second, that provision was inserted before the adoption of the act giving the landlord a lien for advances without writing, and, therefore, it falls in the category of other apparent inconsistencies in the statutes on that subject, some of which have already been mentioned. That section was not intended to make indexing a prerequisite of the validity of the lien. The Court held in *Lyons* v. *Tedder,* 7 S. C. 69, that a lien was valid as between the parties without indexing. Therefore, the statute must be construed to mean that, to have the effect of protecting the lienee against subsequent creditors or purchasers, it must be indexed. This construction harmonizes and gives effect to all the provisions of the statutes. The other completely destroys some of them.

Having seen that the Civil Code of 1902 should be construed to give the landlord a lien for advances without writing, we next inquire what effect, if any, the act of 1909 (26 Stat. 178), which repealed section 3059 of the Civil Code of 1902, had upon that right. The act of 1909 merely repealed

section 3059, which provided that "any person" making advances should have a lien, provided it was in writing. The intention to repeal the provision of section 3057, *supra,* which gave the landlord a lien without writing for advances was not expressed, and it is not to be implied, because the implication is not necessary. Repeals by implication are not favored. The implication of the intention to repeal must be necessary, and it must arise out of a repugnancy between the statutes so direct and positive that they can not be reconciled. If, by any reasonable construction, both can be allowed to stand, that construction must be adopted. We have already shown that the provision in question is not only not repugnant to the other provisions of the law upon the subject, but that it is in harmony with them.

The conclusion which I have reached is fortified by the decision of this Court in *State* v. *Lanier,* 79 S. C. 103, 60 S. E. 225. In fact, it is the necessary logical sequence of that decision. The Court had held in *Hair* v. *Blease,* 8 S. C. 63, that, under the act of 1869, the laborer did not have a lien on the crops unless his contract was in writing. But, in *State* v. *Lanier,* decided in 1908, after the repeal, by its omission from the Code of 1902, of section 2400 of the General Statutes of 1882, which required all liens on crops, except the landlord's lien for rent, to be in writing, the Court overruled *Hair* v. *Blease,* and held that a laborer has a lien on the crops without a contract in writing. While it is true that the repeal of section 2400, *supra,* was not mentioned, nor was it made a ground of the decision, yet that decision could not have been reached in the face of the positive requirement of that section so long as it was a part of the statute law of the State. That case can not be distinguished, and, upon the principle involved, we must conclude that, as between him and his tenant, the landlord also has a lien for advances without writing. Of course, if he wishes his lien to protect him against subsequent creditors and pur-

chasers, he must make his contract in writing, and have it indexed as required by the statute.

For the foregoing reasons, the order appealed from is reversed.

CIRCUIT JUDGES PRINCE, DeVORE, SEASE, RICE, BOW-MAN, *concur.*

CHIEF JUSTICE GARY, *concurring and dissenting.* On or about the first day of January, 1912, the plaintiff and the defendant, R. E. Ward, entered into an agreement whereby the plaintiff leased to said defendant the tract of land, described in the complaint, for the year 1912, in consideration of the sum of $75.00; and, at the request of the defendant, the plaintiff advanced to him fertilizers to the extent of $100.91 in value. The defendant refused to pay for the advances, and was disposing of his crop when the plaintiff sued out an agricultural warrant, under which two bales of cotton were seized. On motion of the defendant, the Court set aside the warrant, on the ground that the agreement for advances was not in writing, and the plaintiff appealed.

The record shows that when the case was heard in the Circuit Court, it was agreed that the only question to be decided was, whether the statute required the agreement for advances to be in writing, in order to create a lien on the crop; and that is the only question presented by the exceptions.

In 1885 the legislature passed an act entitled: "An act to prescribe the priorities of certain statutory liens," which contained these provisions:

"That from and after the passage of this act, the landlord shall have a lien upon the crops of his tenant for his rent, in preference to all other liens. That laborers who assist in making any crop shall have a lien thereon to the extent of the amount due them for such labor, next in priority to the landlord, and as between such laborers there shall

be no preference. That all other liens for agricultural sup-
plies shall be paid next, after the satisfaction of the liens of
the landlord and laborers, and shall rank in other respects
as they do now under existing laws.

Sec. 2. "That no writing or recording shall be necessary
to create the liens of the landlord, but such lien shall exist
from the date of the contract, whether the same be in writ-
ing or verbal.

Sec. 3. "That all acts and parts of acts inconsistent with
or supplied by this act be, and the same are hereby,
repealed."

Prior to that time the law, as stated in sections 2397, 2399
and 2400, Revised Statutes of 1882, was as follows:

Sec. 2397: "If any person, or persons, shall make any
advance or advances, either in money or supplies, to any
person or persons who are employed, or about to engage in
the cultivation of the soil, the person or persons so making
such advance or advances, shall be entitled to a lien on the
crop, which may be made during the year upon the land, in
the cultivation of which the advances so made have been
expended, in preference to all other liens, existing or other-
wise, to the extent of such advance or advances: *Provided,*
An agreement in writing shall be entered into, before such
advance is made to this effect, in which shall be specified
the amount to be advanced, or in which a limit shall be fixed
beyond which the advances, if made from time to time dur-
ing the year, shall not go."

Sec. 2399. "Each landlord leasing lands for agricultural
purposes, shall have a prior and preferred lien for rent, to
the extent of all crops raised on the lands leased by him,
whether the same be raised by the tenant or other persons,
and enforcible in the same manner as liens for advances,
which said lien shall be valid without recording or filing:
*Provided,* That, subject to the liens herein provided for, and
enforcible in the same way, the landlord shall have a lien on
all the crops raised by the tenant, for all advances made by .

the landlord during the year. *Provided, further,* Every lien for advances and for rent, when the agreement is for more than one-third of the crop, shall be indexed in the office of the register of mesne conveyances of the county in which the lienor resides, within thirty days from the date of the lien, (and the indexing of the said lien shall constitute notice thereof to all third persons, and entitle the same to the benefit of this chapter) ; said index shall show the names of the lienor and lienee, the date and amount of lien, a brief description of the place so cultivated, and for indexing, said clerk shall receive fifteen cents for each lien from the party representing the same, and said indexing shall be a sufficient record of the same, and the property covered by said lien so indexed as aforesaid, if found in the hands of subsequent purchasers or creditors, shall be deemed liable to said lien."

Sec. 2400. "All liens herein provided for shall be in writing, except the landlord's lien for rent, when the amount does not exceed one-third of the crop."

The first ground upon which it is contended that the landlord has a lien for advances, whether the agreement for such advances is in writing or verbal, is the use of the word "liens," in section 2, act of 1885, which provides, that "no writing or recording shall be necessary to create the liens of the landlord, but such lien shall exist, from the date of the contract whether the same be in writing or verbal."

There are several reasons why this proposition is untenable. The act of 1885 shows upon its face that the use of the word "liens" instead of "lien" was a mere clerical error, as it was followed immediately by the words "such lien." This was the construction placed upon that act by the legislature on three different occasions. The first was when it was incorporated in the Revised Statutes of 1893, as section 2512; the second, when it was incorporated in the Code of Laws, 1902, as section 3057; and the third, when it was incorporated in the Code of Laws, 1912, as section 4162.

Furthermore, at the time the act of 1885 was passed. section 2400, Revised Statutes of 1882, was of force, and so remained until it was left out, when the Code of Laws was adopted in 1902. That section required all liens to be in writing, except the landlord's for rent, when the amount did not exceed one-third of the crop; and it is wholly inconsistent with the theory that the provisions of the act of 1885 rendered it unnecessary to reduce to writing the landlord's agreement for advances.

When the Revised Statutes of 1893 were adopted, section 2400 was omitted, not for the purpose of repealing it, as the omission to incorporate it did not have such effect at that time, but for the reason that there was no longer any necessity for it to remain upon the statute book. Section 2, act of 1885, repealed so much thereof, as required the landlord's lien for rent to be in writing, when the amount exceeded one-third of the crop; the section (2081, Revised Statutes, 1882, incorporated in the Code of Laws, 1902, as section 3058) in regard to the lien of the laborer for his services, showed that such lien was not required to be in writing; and section 2397, Revised Statutes of 1882, showed that no person making advances for agricultural purposes, could acquire a lien on the crop, unless the agreement was reduced to writing. The landlord's lien for advances (as we will hereinafter show) stood upon the same footing as the lien of other persons making advances, and that, consequently, the statutes required both to be in writing. When the Code of Laws, 1902, was adopted it incorporated, the several sections in the Revised Statutes of 1893, concerning agricultural liens, except section 2400, and it was evidently omitted, because it was no longer deemed material.

There is still another reason why the act of 1885 did not have the effect, for which appellant's attorneys contend. It was decided in the case of *Whaley* v. *Jacobson,* 21 S. C. 51, that a landlord, to secure a lien for advances to his tenant, or for rent exceeding one-third of the crop, must comply with

the same terms and conditions as are imposed by the statute upon those, other than landlords, making advances to the tenant. In that case the Court used this language: "The law favors the landlord, but we do not suppose that, in giving priority to rent, the legislature * * * intended to do more than secure the rent proper, to the landlord, and then leave him to make agricultural advances to his tenants, upon the same terms and conditions as to recording, etc., as were imposed upon all others. The law expressly declares such to be the intention, as to so much of the crop as exceeds one-third, and we do not see why it should not be so construed, in reference to advances made by the landlord to his tenant, which are not in the proper sense 'rent.' " Turning to section 2397, Revised Statutes of 1882, incorporated in the Code of Laws, 1902, as section 3059, it will be seen that persons other than landlords, who made advances to tenants, did not acquire a lien, unless the agreement was in writing; consequently it follows that the landlord, "who makes agricultural advances to his tenants upon the same terms and conditions as to recording, etc., as were imposed upon all others," could not acquire a lien for advances, unless the agreement was in writing.

In 1909, section 3059, Code of Laws, 1902, was repealed. That section created a lien in favor of *any person or persons* who complied with its requirements.

If the words "any person or persons" include the landlord making the advances, then such landlord is not entitled to a lien, even though the agreement be in writing. The conclusion we have reached renders it unnecessary to consider the effect of the said repealing act.

It is argued that the case of the *State* v. *Lanier*, 79 S. C. 103; 60 S. E. 225, is authority for the proposition that the contract between the landlord and tenant, for advances, creates a lien, although not in writing. It is only necessary to refer to that case to see that this proposition is untenable,

as the Court then had under consideration statutes very different from those now involved.

Another reason why the view of the appellant's attorneys can not be sustained is because it would be inconsistent with section 3061, Code of Laws, 1902, which provides that every lien for advances shall be indexed, and that the index shall show the names of the lienor and lienee, the date and amount of the lien, and a brief description of the place so cultivated, thus showing it was contemplated that such liens should be in writing.

It thus clearly appears that the *act of 1885* did not dispense with the necessity of reducing the agreement to writing, in order to create the landlord's lien for advances.

It is contended, however, that section *3057, Code of Laws, 1902,* had this effect.

When the Code of Laws, 1902, was adopted, no provisions in regard to agricultural liens were therein incorporated, except those that had already received statutory enactment; and, although they were rearranged and sentences transposed, when incorporated, there is nothing to indicate that they were intended to receive a different construction from that which had already been placed upon them.

It is argued that the provisions which we have italicized in section 3057, Code of Laws, 1902, show that writing is unnecessary to create the landlord's lien for advances. That section, as amended in 1906, is as follows:

"Every landlord leasing land for agricultural purposes shall have a prior and preferred lien for his rent, to the extent of all crops raised on the lands leased by him, whether the same be raised by the tenant or other person. *No writing or recording shall be necessary to create such lien, but it shall exist from the date of the contract, whether the same be in writing or verbal,* and the landlord and his assigns shall have the right to enforce such lien, in the same manner, upon the same conditions, and subject to the same restrictions as are provided in this article for persons mak-

ing advances for agricultural purposes. *And, subject to the liens hereinafter provided for, and enforcible in the same way, the landlord and his assigns shall have a lien on all the crops raised by the tenant for all advances made by the landlord to such tenant during the year."* (Italics added.)

The italicized words are the same as those in section 2399, Revised Statutes, 1882, except the provision therein that no writing or recording was necessary to create the landlord's lien for rent unless the agreement was for more than one-third of the crop.

In construing section 2399, Revised Statutes, 1882, in the case of *Whaley* v. *Jacobson,* 21 S. C. 51, the Court held that the landlord did not have a lien for advances unless the agreement was in writing, and there is no reason why the italicized words should not now *receive* the same consideration, especially since the decision in *Cantey* v. *McClary-Broadway Co.,* 95 S. C. 29, in which this Court held that a landlord has no lien by statute for advances on crops raised by a *servant* on land given him to cultivate as a part of his wages.

Furthermore, while that section gives a landlord a lien for his rent, it did not deem this provision sufficient to show that the lien was valid without being in writing, but added the provision that no writing or recording was necessary to create the lien for rent. If no writing or recording was necessary to create the lien for advances, it would have been very natural for the legislature to have made that provision applicable to liens for advances, as well as rent.

It is next contended that the act adopting the Code of Laws, 1902, is unconstitutional, on the ground that section 5, article VI, of the Constitution, provides that "no alterations or additions to any of the laws therein contained, shall be made, except by bill passed under the formalities heretofore prescribed for the passage of laws."

That act is as follows: "That the Code as submitted by the Code Commissioner of South Carolina (which is hereto attached) be, and the same is, declared to be the 'Code of Laws of South Carolina, 1902,' and said Code is hereby declared to be the only general statutory law of the State, on the 14th day of January, 1902."

Section 5, article VI, of the Constitution, is as follows:

"The General Assembly, at its first session after the adoption of this Constitution, shall provide for the appointment or election of a commissioner, whose duty it shall be to collect and revise all the general statute law of this State then of force, as well as that which shall be passed from time to time, and to properly index and arrange the said statutes when so passed. And the said commissioner shall reduce into a systematic Code the general statutes, including the Code of Civil Procedure, with all the amendments thereto, and shall, on the first day of the session for the year nineteen hundred and one, and at the end of every subsequent period of not more than ten years, report the result of his labors to the General Assembly, with such recommendations and suggestions as to the abridgment and amendments, as may be deemed necessary or proper. Said report, when ready to be made, shall be printed and a copy thereof laid upon the desk of each member of both houses of the General Assembly on the first day of the first session, but shall not be taken up for consideration until the next session of the said General Assembly. The said Code shall be declared by the General Assembly, in an act passed according to the forms of this Constitution for the enactment of laws, to be the only general statutory law of the State; but no alterations or additions to any of the laws therein contained shall be made, except by bill passed under the formalities heretofore prescribed for the passage of laws." * * *

Before proceeding to discuss this question, we desire to call attention to two well settled rules in regard to the consideration of constitutional questions.

When a constitutional question was not raised in the Circuit Court it can not, properly, be made the basis of an exception on an appeal to the Supreme Court.

Ordinarily, the Court will refuse to consider a constitutional question unless it is necessary to the determination of the case, in which such a question is presented.

*Ex parte Florence School,* 43 S. C. 11, 20 S. E. 794; *Butler* v. *Ellerbe,* 44 S. C. 256, 22 S. E. 425; *Newton* v. *Woodley,* 55 S. C. 132, 32 S. E. 531; *Johnson* v. *Ry.,* 55 S. C. 152, 33 S. E. 174; *Lowrimore* v. *Mfg. Co.,* 60 S. C. 153, 38 S. E. 430; *Burnett* v. *Ry.,* 62 S. C. 281, 40 S. E. 679; *Moore* v. *Napier,* 64 S. C. 564, 42 S. E. 997; *State v. Morris,* 67 S. C. 153, 45 S. E. 178; *Johnson* v. *Ry.,* 73 S. C. 36, 52 S. E. 644; *Montgomery* v. *Ry.,* 73 S. C. 503, 53 S. E. 987; *Brickman* v. *Ry.,* 74 S. C. 306, 54 S. E. 553; *Park* v. *Cotton Mills,* 75 S. C. 560, 56 S. E. 234; *Walker* v. *Ry.,* 77 S. C. 161, 57 S. E. 764; *State* v. *Cain,* 78 S. C. 348, 58 S. E. 937.

The constitutionality of said act was not raised in the Circuit Court, and, furthermore, there are other grounds besides the constitutionality of the act, upon which the decision may be rested.

Inasmuch, however, as our construction of the foregoing section will not change the conclusion we have reached on the other questions, and the rights of the parties to this action will not be prejudiced; and, inasmuch as this is an exceedingly important question which, no doubt, the Court would be called upon to decide at an early day, we have concluded to waive the foregoing objections and proceed to its determination.

The duty imposed upon the Code Commissioner to reduce into a systematic Code of the general statutes with all the amendments thereto, and report the result of his labors to the General Assembly, shows that the framers of the Constitution contemplated that his report would embody, as far as possible, all the general statutory law of the State; but they realized that errors would be made, and that it would be

necessary to make alterations and additions to the laws contained in the report of the commissioner; they, therefore, provided the manner in which the alterations or additions should be effected, to wit: by bill passed under the formalities prescribed for the passage of other laws. The report is required to be placed upon the desks of the members of the legislature, and can not be taken up for consideration until the next session thereafter. The Constitution requires these things to be done, in order that the members of the legislature may have ample time for ascertaining the necessary alterations and additions; and, in order that the alterations and additions may not then be made, without due consideration, it is provided that the report shall not be amended as an ordinary act, but that alterations or additions could only be made in the most formal manner for the passage of statutes.

When all these steps were taken then it was intended that the report of the commissioner should be declared by an act of the legislature, to be the only general statutory law of the State, so as to enable any person to ascertain the general statutory law of the State, without being compelled to search beyond the Code of laws then of force, and the statutes subsequently enacted.

This construction gives effect to all the provisions of said section, and any other construction would defeat the great change which was intended to be made by the Constitution in the codification of the general statutes

Furthermore, the word "therein," in the provision that "no alterations or additions to the laws therein contained shall be made, etc.," has reference to the report of the commissioner, and not to the general statutory law of the State, to be found elsewhere than in the said report. That report was denominated a "Code," and it was this "Code" that the General Assembly was required to declare to be the only general statutory law of the State, after such alterations or additions as it might see fit to make.

It is unreasonable to suppose the framers of the Constitution intended that the "Code," after it had been declared to be the only general statutory law of the State, should merely have the force and effect of a statutory compilation as such would have been its effect without the foregoing constitutional provision.

For these, reasons we think the judgment should be affirmed.

MR. JUSTICE WATTS *and* CIRCUIT JUDGES MEMMINGER, WILSON, GARY *and* SPAIN *concur.*

MR. JUSTICE FRASER, *concurring and dissenting.* This is a decision to enforce a landlord's lien for advances to his tenant. The contract is not in writing. The sole question is, has the landlord a lien for advances to his tenant unless the contract is in writing and recorded? The question arises between the landlord and tenant solely. The General Statutes of 1882 provide for a lien for the landlord for rent and for advances. It provides that the lien for rent need not be in writing. In 1885, vol. XIX, p. 146, the legislature passed an act fixing the priority of liens upon crops, and provided section 2—"That no writing or recording shall be necessary to create the liens of the landlord, but such lien shall exist from the date of the contract, whether the same be in writing or verbal." This provision was left out of the Codes of 1902 and 1912. This raises the very interesting and important question as to the force and effect of the Codes.

The Codes in this State are adopted under article VI, section 5, of the Constitution of South Carolina, which is as follows:

1    "The General Assembly, at its first session after the adoption of this Constitution, shall provide for the appointment or election of a commissioner, whose duty it shall be to collect and revise all the general statute law

of this State then of force as well as that which shall be passed from time to time, and to properly index and arrange the said statutes when so passed. And the said commissioner shall reduce into a systematic Code the general statutes, including the Code of Civil Procedure, with all the amendments thereto, and shall, on the first day of the session for the year nineteen hundred and one, and at the end of every subsequent period of not more than ten years, report the result of his labors to the General Assembly, with such recommendations and suggestions as to the abridgment and amendments as may be deemed necessary or proper. Said report, when ready to be made, shall be printed, and a copy thereof laid upon the desk of each member of both houses of the General Assembly on the first day of the first session, but shall not be taken up for consideration until the next session of said General Assembly. The said Code shall be declared by the General Assembly, in an act passed according to the forms of this Constitution for the enactment of laws, to be the only general statutory law of the State; but no alterations or additions to any of the laws therein contained shall be made except by bill passed under the formalities heretofore prescribed for the passage of laws. Provision shall be made by law for filling vacancies, regulating the term of office, and the compensation of said commissioner, not exceeding five hundred dollars per annum, and imposing such other duties as may be desired. And the General Assembly shall, by committee, inquire into the progress of his work at each session."

While there are some things in this section that are not clear, yet there are some things that are clear.

The clear provisions are:

1st. The Code Commissioner is required to bring into his report all the general statutes of this State then of force.

2d. All general statutes not included are repealed. The Code contains "the only general statutory law of the State."

3d. No changes can be made in the statutes contained therein except by bills that shall conform to all the requirements of the Constitution for the adoption of an act.

4th. The bill of adoption shall simply declare that the Code is the Code.

In 1882 the "general statutes" were adopted as an act, and all the changes made by the codifiers and even the sequence of sections under the rule that the last clause shall govern, in case of conflict, made changes in the statute laws of this State that the legislature, and even the codifiers themselves, did not, and could not, know until the lessons were learned by sad experience. It is very manifest that the constitutional convention intended that, in future, the codifiers should have no such autocratic power, so the Constitution provided in unmistakable terms that each change in the general law should be made by separate bill passed with all the formalities and safeguards provided by the Constitution. The application is more difficult but of great importance. In 1885 the legislature provided that the landlord shall have a lien for rent and supplies, and "that no writing or recording shall be necessary to create the liens of the landlord." If the landlord has lost the right to his lien for advances, it is because the general statute has been changed in the adoption of the Code. (There was no separate bill to change it.) That is just the thing the Constitution forbids. The Constitution provides, in the Codes to be adopted under it, a "City of Refuge" for all general laws. All without are destroyed, but all within are preserved in their integrity. Let no one misunderstand. The Codes do not protect those things contained therein that are not law. If provisions are included that are not law, they do not become law by being incorporated. The codifier is to collect statutes that are in force, and everything else is forbidden, and, therefore, a nullity.

The act of 1885 was not the result of inadvertence. The Senate Journal shows that it was the subject of vigorous and

determined attack. A motion was made to strike out section 2, and it failed. There can be no doubt that the legislature, in 1885, intended to provide, and did provide, "that no writing or recording shall be necessary to create the liens of the landlord." Both Codes declare that the landlord shall have his liens. The liens are not repealed under the provision. No. 2, not being repealed, it can not be changed by provision No. 3. It is said, however, that the Code contains the only general statutory law. If that be true, then the condition makes a conflict between provisions No. 2 and No. 3. The rule is well settled that No. 3 governs. The result is wise. The adoption of a different rule would work untold evil. A Code Commissioner or a printer, advertently or inadvertently, have no power to change the laws therein contained, and the Constitution so declares. "But no alteration or addition to any of the laws therein contained shall be made except by bill passed under the formalities heretofore prescribed for the passage of laws." It is said, however, that this unwritten and unrecorded lien would work great hardships. With that the Courts have nothing to do. The legislature doubtless knew that information must be sought from the landlord as to his rent, and at the same time and place, and from the same person the information could be obtained as to any lien for advances. The first word is "liens," the second "lien." This is clearly a consolidation or merger of the two liens into one lien.

It follows from the above that the landlord's lien being in the Codes, are preserved in their integrity, and the appellant herein has a lien on the property seized, and the judgment of the Circuit Court should be reversed.