0986*

Mazon Lem GARRETT, Deceased, Employee, Patricia N. Garrett, Widow, Donnell M. Garrett, Angel Catherine Fogle, Shannon Sue Garrett and Leitha Mae Garrett, Claimants, Respondents v. LIMEHOUSE & SONS, INC., Employer, Niagara Fire Insurance Company, Carrier, Appellants.

(360 S. E. (2d) 519)

Court of Appeals

* The following opinion contains a publishing error; therefore, this opinion has been withdrawn and has been replaced by 293 S. C. 539. The Reporter and The R. L. Bryan Company apologize for any inconvenience.

*Kay G. Crowe* and *R. Lewis Johnson* both of *Barnes, Alford, Stork & Johnson,* Columbia, *for appellants.*

*James D. Cooper, Jr.* of *Ratchford & Cooper,* Columbia, *for respondents.*

Heard April 13, 1987.

Decided July 6, 1987.

GARDNER, Judge:

This is a workers' compensation case involving the construction of Section 42-1-560(f), Code of Laws of South Carolina (1976), as amended. The appealed order affirmed a holding by the full commission. We affirm.

Under our scope of review, the findings of the commission will not be set aside if they are supported by substantial evidence and not controlled by legal error. *Todd's Ice Cream,*

*Inc. v. S. C. Employment Security Comm.*, 281 S. C. 254, 315 S. E. (2d) 373 (1984).

The deceased employee, Mazon Lem Garrett (Garrett), was employed by Limehouse & Sons, Inc., (Limehouse) as a welder. Limehouse was performing work on a project at a saw mill belonging to Dean Dempsey Lumber Company (Dean Dempsey). On March 10, 1982, Garrett was fatally injured when struck by a falling log while the saw mill was operating. Limehouse's carrier[1] admitted liability, and an award of death benefits for 500 weeks was made to the beneficiaries by the Industrial Commission on July 19, 1982. Thereafter on August 8, 1983, Garrett's widow, the administratrix of his estate, brought a wrongful death action sion above quoted which permitted the commission to make a reduction of the carrier's lien on the proceeds of the settlement in proportion to the amount that the settlement figure bore to the commission's evaluation of the employee's "total cognizable damages at law."

We agree with the meaning ascribed by the full commission and the circuit court to the words "total cognizable damages at law." We hold, however, that these words, while not difficult of understanding, are not determinative in addressing the contention of Limehouse and the carrier; in order to do this, attention must be focused upon the word "settlement."

All of the facts relating to whether Dean Dempsey was in fact a statutory employer of Garrett are not of record. But assuming, *arguendo*, that Dean Dempsey was a statutory employer of Garrett, Dean Dempsey enjoyed an absolute defense. *See Parker v. Williams and Madjanik, Inc.*, 275 S. C. 65, 267 S. E. (2d) 524 (1980). We can but assume, then, that Dean Dempsey in settling the case discounted the defense that it was in fact a statutory employer of Garrett and compromised for $75,000 to rid itself of the danger of a much larger verdict if the case were tried. It is, then, obvious that the settlement was the result of a *bona fide* compromise which on the one hand reflected the concerns of Garrett's executrix that Dean Dempsey might establish that it was in fact Garrett's statutory employer and

---

[1] The appellant Niagara Fire Insurance Co. (the carrier).

against Dean Dempsey as a third party alleging that Garrett's death was caused by various negligent acts and omissions on the part of Dean Dempsey. Dean Dempsey defended on the grounds, *inter alia*, that Garrett was Dean Dempsey's statutory employee and therefore barred from bringing a third party negligence action. Dean Dempsey made a motion to dismiss on the basis that it was protected, as a statutory employer, by the Workers' Compensation Act. Prior to a decision on the motion to dismiss, the case was compromised for $75,000. All parties to this action agree that the settlement was advisable and wise. Thereafter, the administratrix filed a petition pursuant to Section 42-1-560(f); Code of Laws of South Carolina (1976), as amended, to reduce the carrier's lien on the $75,000.[2] Section 42-1-560(f) in pertinent part provides:

> Notwithstanding other provisions of this item, where an employee or his representative enters into a settlement with or obtains a judgment upon trial from a third party in an amount less than the amount of the employee's estimated total damages, the commission may reduce the amount of the carrier's lien on the proceeds of such settlement in the proportion that such settlement or judgment bears to the commission's evaluation of the employee's total cognizable damages at law. Any such reduction shall be based on a determination by the commission that such reduction would be equitable to all parties concerned and serve the interests of justice.

The single commissioner found the "total cognizable damages at law" to be the amount of the settlement, i.e., $75,000. And, since the carrier's lien was greater than $75,000, the single commissioner ruled that the carrier was entitled to the entire $75,000, less attorney fees. The administratrix appealed to the full commission.

The full commission reversed and found that the "total cognizable damages at law" as used in the statute meant those damages which are legally recoverable in the type of action in which the settlement occurs. The full commission observed that in a wrongful death action, the elements of

---

[2] The carrier acquired a lien on the settlement under Section 42-1-560(b).

damages include (1) pecuniary loss, (2) mental shock and suffering, (3) wounded feelings, (4) grief and sorrow, (5) loss of companionship and (6) deprivation of the use and comfort of the victim's society, the loss of his experience, knowledge and judgment in managing the affairs of himself and of his beneficiaries, in addition to the loss of his ability to earn money for the support, maintenance, care and protection for his spouse and children, and for the education and training of the latter. Evidence was taken as to these elements of damages and the full commission found that the "total cognizable damages at law" in this case were $500,000; the full commission proportionately reduced the carrier's lien. On appeal to the Court of Common Pleas, the full commission's order was affirmed. We affirm.

Our review of the literature revealed no cases or textbook authorities specifically addressing the reduction of a carrier's lien in workers' compensation law.

On appeal Limehouse and the carrier argue that there is a difference between "the employee's estimated total damages" and the "total cognizable damages at law"; they argue that the probability or improbability of a full recovery in the third party action is a necessary factor to be considered in arriving at the "total cognizable damages at law." They argue that since one of Dean Dempsey's defenses was that it was a statutory employer of Garrett and it had moved to dismiss the third party action on that basis, the settlement was premised upon the viability of this defense. This argument presents the sole issue of merit presented on appeal for decision by this court.

Prior to 1978, an employee (or his representative in the case of death) was entitled to bring a third party action against the person or entity responsible for his or her injury. The law provided, however, that the workers' compensation carrier was entitled to a lien against the proceeds of any recovery from the third party. The carrier and the claimant were allowed to agree upon a division of the proceeds among themselves, but absent such an agreement, the carrier was entitled to a lien against *all* of the proceeds of the recovery. In 1978 Section 42-1-560(f) was amended by adding as an addendum to that section the pertinent provi-

on the other hand Dean Dempsey's legitimate concern of possible liability for negligence despite the "statutory employer" defense. The word "settlement," we hold, as used in the quoted paragraph of Section 42-1-560(f) is synonymous with the word "compromise." In fact, except for the quoted paragraph which was by amendment added as an addendum in 1978 to Section 42-1-560(f), the words "compromise settlement" are used throughout the section. We hold that, in drafting the 1978 amendment, the legislature intended to be consistent in envisioning a settlement based upon a compromise so that the word "settlement" was intended to and meant to be synonymous with the word "compromise."

Having so held, we hold additionally that the words "total cognizable damages at law" cannot be construed in isolation; they have to be construed in the context of the entire sentence. When so construed, it is clear that the legislature did encompass within its thinking the uncertainties of trial; this was done by the use of the word "settlement" but not by the use of the words "total cognizable damages at law," which have a clear and distinct meaning of their own, i.e., all of those elements of damages recognized and known to the law as being applicable to third party actions including wrongful death actions. And we so hold.

We also hold that the General Assembly, by the use of the words "may reduce" in the 1978 amendment to Section 42-1-560(f), invested in the Industrial Commission wide discretion in reducing a carrier's lien on the proceeds of a compromise of a third party action. Within that discretion are the many factors which we have above considered. We hold that the exercise of this discretion will not be disturbed on appeal absent clear abuse. In the case before us we find no abuse. And we so hold.

We find no merit to the remaining exceptions presented by this appeal.

For the reasons stated the appealed order is affirmed.

Affirmed.

SHAW and CURETON, JJ., concur.