546 S.E.2d 657

James W. BREEDEN, Jr., Employee, Respondent/Appellant,

v.

TCW, INC./TENNESSEE EXPRESS, Employer, and Granite State Insurance Co., Carrier, Appellants/Respondents.

No. 3319.

Court of Appeals of South Carolina.

Heard Feb. 7, 2001.

Decided March 12, 2001.

Withdrawn and Substituted April 24, 2001.

Stanford E. Lacy, of Collins & Lacy, of Columbia, for appellants/respondents.

Saunders F. Aldridge, III, of Hunter, Maclean, Exley & Dunn, of Savannah, GA; D. Michael Kelly, of Suggs & Kelly, of Columbia; and William B. Harvey, III, of Harvey & Battey, of Beaufort, for respondent/appellant.

## ORDER WITHDRAWING ORIGINAL OPINION AND SUBSTITUTING OPINION, AND DENYING PETITIONS FOR REHEARING

PER CURIAM:

Opinion No. 3319, filed in the appeal above on March 12, 2001, is hereby withdrawn and the following opinion is substituted therefor. Furthermore, after careful consideration of the Petitions for Rehearing, this court is unable to discover any material fact or principle of law that has been overlooked or disregarded. It is, therefore, ordered that the petitions for rehearing be denied.

**AND IT IS SO ORDERED.**

/s/ Kaye G. Hearn, C.J.

/s/ C. Tolbert Goolsby, Jr., J.

/s/ H. Samuel Stilwell, J.

STILWELL, Judge:

TCW, Inc./Tennessee Express (Employer) and its workers' compensation carrier, Granite State Insurance Company (Carrier), appeal the order of the circuit court affirming the full commission's decision to reduce Carrier's lien and the finding that Carrier's lien does not include future medical expenses. James Breeden, Jr. cross-appeals asserting that the circuit court did not have jurisdiction to hear Employer's and Carri-

er's appeal from the full commission because their notice of intent to appeal was deficient. As to Employer's and Carrier's appeal, we affirm in part, reverse in part, and remand. As to Breeden's cross-appeal, we affirm.

## FACTS

On December 14, 1993, Breeden was severely injured when a truck owned by Piggly Wiggly crossed the center line and hit Breeden's truck head on. At the time of the accident Breeden was an owner/operator driving under Employer's ICC license. Breeden filed a workers' compensation claim which Employer denied on the theory that Breeden was an independent contractor, not an employee. The single commissioner found Breeden was an employee, and the full commission affirmed. Employer and Carrier did not appeal further. Workers' compensation benefits were brought current and provided thereafter.

On July 28, 1995, Breeden filed another Form 50 alleging he was totally disabled as a result of traumatic physical brain injury. The single commissioner found for Breeden and awarded lifetime benefits pursuant to S.C.Code Ann. § 42–9–10 (Supp.2000). Employer and Carrier did not appeal this decision.

During this same time, Breeden pursued a third party claim against Piggly Wiggly. Piggly Wiggly's liability carrier advanced $50,000 to help defray expenses, including living expenses, for Breeden's family. This was done with Carrier's consent and with the understanding that this money would be included as part of the ultimate settlement. Piggly Wiggly had $11 million in liability insurance coverage, and the parties acknowledge that liability was clear. Breeden alleged economic losses alone that were over $9 million including future medical expenses and a range of total cognizable damages from $18 to $25 million. However, no lawsuit was ever filed against Piggly Wiggly, and Mr. Breeden's claim was settled for $4.2 million while his wife's loss of consortium claim was settled for $1.8 million. The Breedens' attorney explained that the claims were settled for such a low sum compared to the amount of insurance available and the extent of provable

damages because "[w]e had to. This family was coming apart at the seams."

Subsequent to settling the third party claim against Piggly Wiggly, Breeden notified the workers' compensation commission of the settlement and moved to have the commission determine Carrier's lien and the balance remaining to be paid to Carrier under S.C.Code Ann. § 42–1–560(g) (1985). At the hearing, Breeden took the position that Carrier's lien should be reduced using the total cognizable damages provision of S.C.Code Ann. § 42–1–560(f). Both sides introduced detailed life care plans projecting Breeden's future medical needs.

The single commissioner found that Breeden was not entitled to a lien reduction and ordered the proceeds from the third party claim distributed in accordance with section 42–1–560(g). He also found section 42–1–560(f) relating to total cognizable damages was not applicable and did not impact the provisions of 42–1–560(g). Additionally, he held "compensation" as used in section 42–1–560 to include all future medical expenses. The single commissioner awarded Breeden's attorneys $1,456,626 in fees and litigation expenses and ordered $801,713.81 be paid to Carrier for its lien to date. He ordered the balance of the $4.2 million settlement paid to Carrier to hold in trust until further order of the commission. The single commissioner then ordered Dr. Weed, Breeden's life care plan expert, to update the life care plan and provide it to an insurance annuities expert. The expert was ordered to determine the cost to annuitize future benefits, including future medical expenses, using rated age costs and an installment refund feature. The single commissioner then directed that this information would be utilized to determine the present value of future benefits. Carrier would be allowed to retain that amount and the balance would be paid to Breeden.

Breeden appealed to the full commission which reversed virtually every holding by the single commissioner. The full commission found that it would be appropriate under the statutory scheme to utilize the concept of total cognizable damages and determined them to be $13.5 million. The commission then found that the lien should be reduced, applying the factors from *Kirkland v. Allcraft Steel Co.*, 329 S.C. 389, 496 S.E.2d 624 (1998). Using these factors, the full

commission reduced the Carrier's lien to 31% of what it found its current value to be, applied the same reduction to future compensation, and held that Carrier's lien did not apply to future medical expenses. Carrier appealed to the circuit court which affirmed the full commission.

## ISSUES

### Employer/Carrier's Appeal

I. Did the full commission err in its application of the *Kirkland* factors when it determined that Carrier's lien should be reduced?

II. Did the full commission err in applying the lien reduction to future compensation?

III. Did the full commission err in determining that under section 42–1–560 Carrier's lien did not include future medical expenses not yet incurred at the time of the third party settlement?

IV. Did the full commission err in freezing the lien to its current amount of $801,713.81?

### Breeden's Cross–Appeal

Did the circuit court have jurisdiction to hear Employer's and Carrier's appeal because their notice of intent to appeal was defective?

## LAW/ANALYSIS

### Breeden's Cross–Appeal

### Jurisdiction of the Circuit Court

In his cross-appeal, Breeden asserts the circuit court did not have jurisdiction to address the order of the full commission because Employer's and Carrier's notice of intent to appeal was deficient. We find this argument to be without merit.

Breeden contends Employer's and Carrier's notice of intent to appeal did not comply with the requirements of the Administrative Procedures Act because the grounds listed for alleged error did not reflect a complete explanation of the alleged

error. As support for this contention, Breeden cites *Pringle v. Builders Transport,* which provides:

> A petition for circuit court review pursuant to the Administrative Procedures Act (APA) must direct the court's attention to the abuse allegedly committed below, including a distinct and specific statement of the rulings of which appellant complains. The circuit court lacks jurisdiction of the appeal if the notice is insufficient.

298 S.C. 494, 495, 381 S.E.2d 731, 732 (1989) (citations omitted).

 The notice of intent to appeal contains twelve exceptions to the order of the commission. We have reviewed these twelve exceptions and hold that they were sufficient to satisfy the requirements of the APA. They are clear as to what the commission ordered and as to the error assigned to the provisions of the order. Therefore, we hold the notice of appeal was sufficient and the circuit court had jurisdiction over this appeal.

### *Employer/Carrier's Appeal*

### I. *Kirkland* Factors

Employer and Carrier argue the commission erred in incorrectly applying the *Kirkland* factors when it determined Carrier's lien should be reduced. We agree.

In all cases involving the distribution of third party proceeds, the threshold issue is whether the carrier's lien should be reduced. Section 42-1-560(f) provides in relevant part:

> Notwithstanding other provisions of this item, where an employee or his representative enters into a settlement with or obtains a judgment upon trial from a third party in an amount less than the amount of the employee's estimated total damages, the commission may reduce the amount of the carrier's lien on the proceeds of such settlement in the proportion that such settlement or judgment bears to the commission's evaluation of the employee's total cognizable damages at law. Any such reduction shall be based on a determination by the commission that such reduction would

be equitable to all parties concerned and serve the interests of justice.

S.C.Code Ann. § 42–1–560(f) (1985).

In *Kirkland,* our supreme court recognized that the commission may reduce the carrier's lien in the manner set forth in the above statute, but the reduction is not automatic. 329 S.C. at 394, 496 S.E.2d at 626. In *Kirkland,* the court listed four factors the commission should consider in deciding whether or in what amount to reduce the lien. The court held that "[i]n considering whether or not to reduce the lien, the commission may consider factors such as the strength of the claimant's case, the likelihood of third party liability, claimant's desire to settle, and whether carrier. is unreasonably refusing to consent to a settlement." *Id.* These factors all focus on the circumstances surrounding the third party settlement.

Employer and Carrier contend that in determining whether to authorize a reduction of Carrier's lien, the commission erred in failing to properly analyze the factors set out in *Kirkland.* To an extent, we agree.

The first *Kirkland* factor analyzed by the commission was the likelihood of third party liability. The commission found:

*Kirkland* provides no guidance as to how this factor is to be considered. However, it is only appropriate that the strong likelihood of Third Party's liability lends support to reducing the Carrier's lien. The weaker the case of third party liability, it is more likely it would be that any portion of the third party monies actually received by the Claimant would be a windfall to him. Conversely, the stronger the Claimant's case, the more equitable it would be for he or his family to receive a greater portion of the economic consequences of his tragic injury.

■ We believe this rationale to be the opposite of the court's intent in *Kirkland.* In actuality, the stronger the likelihood of third party liability, the less weight the commission should give to the claimant's request for a reduction in the lien. The employer should not have to shoulder an undue proportion of the burden of liability for claimant's damages when a third party has unquestioned liability for the claimant's injuries. Therefore, as the likelihood of the liability of a third

party increases, the justification for reducing the carrier's lien is proportionately reduced. Since there is little if any question as to Piggly Wiggly's liability in this case, we find this factor's weight militates against a reduction in the lien.

The next factor in *Kirkland* is the strength of claimant's case. We hold the full commission also applied this factor in a manner opposite to that intended in *Kirkland.*

The commission found this factor weighed toward reduction because Breeden's total cognizable damages were great. Because liability was clear, damages were the primary issue in Breeden's case against Piggly Wiggly. Breeden had a strong case against Piggly Wiggly with excellent proof of substantial damages. However, Breeden settled his third party claim much lower than his actual provable damages. The fact that he had a strong case, yet settled for such a relatively low amount, militates against lien reduction. The Employer/Carrier, having no right to involve itself in the third party action, should not be penalized because the case was undervalued or for whatever other reason, valid or not, was not aggressively pursued. Again, this factor's weight militates against a reduction in the lien.

The third *Kirkland* factor addressed by the full commission is the claimant's desire to settle. This factor relates to the need or desire of the claimant to settle his claim against the third party, not against the employer or its carrier. Testimony was presented that it was desirable for Breeden to settle his third party claim against Piggly Wiggly because his "family was coming apart at the seams." Therefore, we find that while Breeden settled for an amount substantially smaller than he possibly could have obtained, this factor weighs favorably toward a reduction in the lien.

The fourth and final *Kirkland* factor is whether the carrier is unreasonably refusing to consent to the settlement. The commission interpreted this factor to mean whether the carrier is unreasonably refusing to settle its lien against the proceeds of the third party settlement. This is incorrect. As pointed out above, the factors in *Kirkland* focus on the circumstances surrounding the third party settlement, not the workers' compensation lien. This factor actually relates to a provision in section 42–1–560(f) that provides: "[t]he carrier

shall not unreasonably refuse to approve a proposed compromise settlement with the third party." S.C.Code Ann. § 42–1–560(f) (1985). It is clear from the record that Carrier interposed no objection to the settlement of the third party claim. Therefore, the weight of this factor also militates against a reduction in the lien.

In addition to the *Kirkland* factors, the full commission included three other factors in its analysis of whether to allow a lien reduction and to what degree to reduce Carrier's lien. These factors were: (1) Carrier's conduct in fulfilling its statutory obligations; (2) the extent of Breeden's injuries; and (3) whether Carrier has an actual exposure. While we are certain the four factors set forth in *Kirkland* are not exclusive, the additional factors analyzed by the commission are not mentioned in *Kirkland.*

■ However, we find two of the three additional factors utilized by the commission are not relevant to the consideration of the lien reduction. Carrier's conduct in fulfilling its statutory obligations has no bearing on settlement of the third party claim. There has been no evidence presented that any act or omission of Carrier prejudiced Breeden's settlement in any manner. Likewise, whether Carrier has an actual exposure is not relevant to the determination of a lien reduction and has no bearing on the third party settlement. The fact that a carrier is re-insured on a claim has nothing to do with the third party settlement. Furthermore, a carrier has a right to purchase reinsurance and be covered by it without that bearing upon the determination of whether a claimant is entitled to a lien reduction.

We do, however, find that the extent of Breeden's injuries should be considered as a factor in determining whether he is entitled to a reduction in the lien. There is no doubt that Breeden is severely injured both mentally and physically, and the damages he has suffered will run into the millions of dollars. This factor could, of course, be considered as a subset of the analysis as to the strength of claimant's case. To the extent that it is considered as a separate factor, we hold it should be analyzed in the same fashion as the strength of claimant's case factor.

■ Due to the seriousness of Breeden's injuries and his legitimate desire to settle for the sake of his family, we find a reduction of Carrier's lien is warranted. However, we believe the analysis employed by the full commission in connection with the *Kirkland* factors to be erroneous and most probably resulted in an excessive reduction. Therefore, we remand this issue to the full commission to make a determination on the percentage by which the lien should be reduced in light of the total cognizable damages, applying the *Kirkland* factors as set out above.[1]

## II. Application of Lien Reduction to Future Compensation

■ Additionally, Employer and Carrier contend the full commission erred in applying the lien reduction to future compensation. They assert that because distribution of third party proceeds is governed by section 42–1–560(g), section 42–1–560(f) does not apply and a lien reduction may not be made to future compensation. We disagree.

Section 42–1–560(f), in pertinent part, speaks in terms of "estimated total damages" and "total cognizable damages at law." S.C.Code Ann. § 42–1–560(f) (1985). Section 42–1–560(g) provides:

When there remains a balance of five thousand dollars or more of the amount recovered from a third party by the beneficiary or carrier after payment of necessary expenses, and satisfaction of the carrier's lien and payment of the share of any person not a beneficiary under this Title, which is applicable as a credit against future compensation benefits for the same injury or death under either subsection (b) or subsection (c) of this section, the entire balance shall in the first instance be paid to the carrier by the third party. The present value of all amounts estimated by the Industrial Commission to be thereafter payable as compensation, with the present value to be computed in accordance with a schedule prepared by the Industrial Commission, shall be held by the carrier as a fund to pay future compensation as

---

1. We offer no opinion as to what relative weight the commission may give to any of the factors employed, and we do not believe it is necessary to give equal weight to each applicable factor.

it becomes due, and to pay any sum finally remaining in excess thereof to the beneficiaries.

S.C.Code Ann. § 42-1-560(g) (1985).

Employer and Carrier assert that these sections cannot be read together because section 42-1-560(g) only specifically incorporates sections (b) and (c). They further contend there is a conflict between these sections and the rules of statutory construction require the subsequent provision, (g), to prevail over the prior one, (f). *See Nat'l Adver. Co. v. Mount Pleasant Bd. of Adjustment,* 312 S.C. 397, 400, 440 S.E.2d 875, 877 (1994) (stating where conflicting statutory provisions exist, the most recent or last in order of arrangement prevails).

■ However, we see no conflict in these provisions. "If the provisions of the two statutes can be construed so that both can stand, this Court will so construe them." *In the Interest of Shaw,* 274 S.C. 534, 539, 265 S.E.2d 522, 524 (1980). Section 42-1-560(f) provides for a lien reduction if a claimant "enters into a settlement with or obtains a judgment upon trial from a third party in an amount less than the amount of the employee's estimated total damages." Section 42-1-560(g) governs the method of distributing excess proceeds from a third party judgment or settlement when future compensation will be owed to the claimant. The carrier retains the present value of future compensation and establishes a fund by which it pays future compensation benefits as they come due. Nothing in the distribution scheme set out in section (g) conflicts with the ability of the commission to reduce the entire carrier's lien. Section (g) may still be applied after a lien reduction under section (f) has been ordered. Furthermore, the clear language of section (f) indicates that the lien reduction should apply to future compensation benefits because it refers to the "employee's estimated total damages." The fact that these damages are to be estimated clearly contemplates that at least some of them have not yet accrued but will in the future. Therefore, the lien reduction is based on the whole of the damages that the claimant has and will suffer—past, present, and future—and should be applied as such.

### III. Future Medical Expenses

Next, Employer and Carrier argue the commission erred in determining that under section 42-1-560 Carrier's lien does

not encumber future medical expenses which have not been incurred at the time of the third party settlement. We agree.

Employer and Carrier contend "compensation" as it appears in section 42–1–560(g) means both income benefits and medically related benefits. Therefore, they assert that under section 42–1–560(g) medical expenses yet to be incurred by Breeden should also be considered part of Carrier's lien for the purpose of establishing a fund from settlement proceeds to pay future medical expenses. As support for this argument, Employer· and Carrier point to the fact that the third party recovery statute, 42–1–560, was adopted from the Model Act which includes future medical expenses in its definition of compensation, and that for the purposes of section 42–1–560 the legislature expanded the definition of "compensation" to conform with the Model Act. Additionally, they argue it would be inequitable to allow Breeden to receive all of his medical expenses from Carrier on the one hand and use the same medical expenses to justify recovery from the third party on the other.

Breeden argues, and the commission found, that this argument is incorrect as the word "compensation" is specifically defined by the legislature in section 42–1–100 as "the money allowance payable to an employee or to his dependents as provided for in this Title and includes funeral benefits provided in this Title." S.C.Code Ann. § 42–1–100 (1985). He contends this definition, and not the definition found in the Model Act, is controlling and further notes that in section 42–1–560(a), (b), and (c), the statute refers to "the right to compensation and other benefits under this Title." Therefore, he argues, the legislature meant to specifically exclude those "other benefits" from section 42–1–560(g) because it failed to mention them as it did in other provisions of the same section.

■ We agree with Employer and Carrier that the legislature intended future medicals to be included in the calculation of the value of Carrier's lien for the purpose of establishing a fund from excess third party settlement proceeds to pay future medical compensation benefits. We hold this to be so for two compelling reasons.

■ First, the language employed by the legislature in adopting the third party liability section of our Act, closely

paralleling the language of the Model Act, leads us to the conclusion that the legislative intent was for compensation as used in section 42-1-560(g) to include both monetary benefits and medical benefits as it does in the definition section of the Model Act. While it is true that upon adopting the portions of the Model Act the legislature did not amend the definition of compensation as contained in section 42-1-100, it did specifically provide, in subsection (b), that the carrier's lien shall extend to the proceeds of recovery "to the extent of the total amount of compensation, including medical and other expenses, paid, or to be paid by such carrier ..." S.C.Code Ann. § 42-1-560(b) (1985). Therefore, the legislature clearly intended for the carrier's lien to extend to medical expenses "to be paid in the future." "The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent whenever possible." *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 62, 504 S.E.2d 117, 121 (1998).

Second, as a matter of policy, it would be inequitable to allow a claimant to recover an award from a third party based on damages including future medical expenses and then require the carrier to pay those same medical expenses which claimant has already recovered without contribution from the third party proceeds. This would result in a double recovery for the claimant. Our courts have consistently held that there can be no double recovery for a single injury. *See Collins Music Co. v. Smith*, 332 S.C. 145, 147, 503 S.E.2d 481, 482 (Ct.App.1998).

This conclusion comports with the views of Professor Larson in his well-respected and oft-quoted work on workers' compensation wherein he stated that this "is the correct result even if the reimbursement provision speaks only of 'compensation' paid." 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 117.03 (2000).

For these reasons, we find that the legislature intended future medicals to be included in the calculation of the value of Carrier's lien for the purpose of establishing a fund from excess third party settlement proceeds to pay future medical benefits. The circuit court erred in affirming the full commission's determination that under section 42-1-560(g) Carrier's

lien does not include future medical expenses which have not yet been incurred at the time of the third party settlement.

■ This case should be remanded for a determination by the full commission as to the present-day value of future benefits, including medical expenses, for the purpose of establishing a fund from excess third party settlement proceeds to pay future compensation benefits. Additionally, in light of our finding that a lien reduction applies to future damages as well as past and present damages, the full commission should, upon determining the value of Carrier's future lien, reduce that lien by a percentage not to exceed the percentage by which it determines to reduce Carrier's current lien.

### IV. Value of Current Lien

Finally, Employer and Carrier assert the full commission erred in freezing the current lien amount at $801,713.81. In light of our disposition of the above issues, we agree.

Breeden's damages are ever increasing. They have certainly increased since the time of the full commission's hearing. Because we are remanding this case to the full commission to determine the proper amount for the lien reduction based on the *Kirkland* factors and to include future medical expenses in Carrier's lien, the full commission should bring the amount of Carrier's current lien up to date to reflect this increase.

### CONCLUSION

Based on our determination that the circuit court erred in affirming the full commission's order which improperly analyzed the factors for lien reduction in *Kirkland* and failed to include future medical expenses in determining the value of Carrier's lien, we affirm in part, reverse in part, and remand this case to the full commission to determine the amount by which Carrier's lien should be reduced, include future medical expenses in the value of Carrier's lien, and bring the value of Carrier's present lien up to date.

For the foregoing reasons, the order of the circuit court is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

HEARN, C.J., and GOOLSBY, J., concur.