584 S.E.2d 379

**James W. BREEDEN, Jr., Employee, Respondent/Petitioner,**

v.

**TCW, INC./TENNESSEE EXPRESS, Employer, and Granite State Insurance Co., Carrier, Petitioners/Respondents.**

No. 25652.

Supreme Court of South Carolina.

Heard Feb. 4, 2003.

Decided July 28, 2003.

Order Denying Rehearing July 28, 2003.

114

Stanford E. Lacy, of Columbia, for Petitioners/Respondents.

D. Michael Kelly, of Columbia; Saunders Aldridge, of Savannah; and William B. Harvey, III, of Beaufort, for Respondent/Petitioner.

Justice PLEICONES.

Respondent/Petitioner James Breeden ("Breeden") was awarded workers' compensation benefits from petitioners/respondents TCW, Inc./Tennessee Express ("Employer") and Granite State Insurance Company ("Carrier") for injuries he sustained in an automobile accident. Breeden settled his claim against the tortfeasor and notified the Workers' Compensation Commission ("Commission") of the settlement. Breeden then moved the Commission to determine the amount of Carrier's lien and to determine the distribution scheme of any remaining settlement proceeds.

The Commission reduced Carrier's lien and ordered that the remaining settlement proceeds be placed in a trust account to pay future compensation. The Commission further found that "compensation" did not include future medical expenses. The trial court affirmed. The Court of Appeals affirmed in part, reversed in part, and remanded. *Breeden v. TCW, Inc./Tennessee Express*, 345 S.C. 201, 546 S.E.2d 657 (Ct.App.2001). Breeden and Carrier each sought writs of certiorari, both of which were granted. We reverse in part, and affirm in part.

## FACTS

On December 14, 1993, Breeden was injured when a truck owned by Piggly Wiggly crossed the center line and hit Breeden's truck head on. Breeden filed a workers' compensation claim.

On July 28, 1995, Breeden filed a Form 50 [1] alleging he was totally disabled as a result of a traumatic physical brain injury and was awarded lifetime benefits pursuant to S.C.Code Ann. § 42-9-10 (Supp.2000). There was no appeal from this Order.

During this time, Breeden pursued a third party claim against Piggly Wiggly. Piggly Wiggly had $11 million in

---

1. A Form 50 is an Employee's Notice of Claim and/or Request for Hearing.

liability insurance coverage, and the parties acknowledge liability was clear. Breeden alleged economic losses alone that were in excess of $9 million, including future medical expenses, and a range of total cognizable damages [2] from $18 to $25 million. The Commissioner held the total cognizable damages were $13.5 million. No lawsuit was filed, and Breeden's claim was settled for $4.2 million while his wife's loss of consortium claim was settled for $1.8 million. Breeden's attorney explained the claims were settled for such a low amount compared to the amount of insurance available because "[w]e had to. This family was coming apart at the seams."

After settling the third party claim against Piggly Wiggly, Breeden notified the Commission of the settlement and moved to have the Commission determine Carrier's lien and the balance remaining to be paid to Carrier under S.C.Code Ann. § 42–1–560(g) (1985). At the hearing, Breeden took the position that Carrier's lien should be reduced using the equitable reduction provision of S.C.Code Ann. § 42–1–560(f) (1985). Both sides introduced detailed life care plans projecting Breeden's future medical needs.

The Commission held that the probable future expenditures in § 42–1–560(g) were subject to the lien reduction provisions of § 42–1–560(f). The Commission also held that under § 42–1–560, the Carrier's lien "does not include future medical expenses which have not yet been incurred at the time of third party settlement. Rather, the lien includes compensation, both past and future, as defined by S.C.Code Ann. § 42–1–100, and those medical expenses paid, or incurred but not yet paid, at the time of the third party settlement." Finally, the Commission found that a reduction of Carrier's lien was equitable to all parties concerned, and reduced the lien in the same proportion as the third party settlement bore to the total cognizable damages.[3]

---

2. The total cognizable damages are "those damages which are legally recoverable in the type of action in which [a] settlement occurs." *Garrett v. Limehouse & Sons, Inc.,* 293 S.C. 539, 360 S.E.2d 519 (Ct.App.1987).

3. The formula in § 42–1–560(f) applies if the settlement amount is less than employee's estimated total damages. The formula is: (third party

The Court of Appeals agreed that the Carrier's lien should be reduced but held that the Commission misapplied the *Kirkland*[4] factors and the reduction formula and therefore may have ordered an excessive reduction. The Court of Appeals also held that the lien reduction subsection, § 42-1-560(f), applies to future compensation. Finally, it held that future medical expenses are to be considered in calculating the amount of Carrier's lien, and for the purpose of establishing a fund to pay future compensation benefits. The Court of Appeals remanded the case to the Commission to recalculate the value of the lien.

## *LAW*

South Carolina Code Ann. § 42-1-560 is a subrogation statute. The injured employee may bring an action against a third-party tortfeasor in order to recover from the ultimate wrongdoer under § 42-1-560(b). If the employee recovers in that action, whether through a judgment, settlement or otherwise, "the carrier shall have a lien on the proceeds of any recovery ... to the extent of the total amount of compensation, including medical and other expenses, paid, or to be paid by such carrier ... to the extent the recovery shall be deemed to be for the benefit of the carrier." S.C.Code Ann. § 42-1-560(b). If the employee enters into a settlement for an amount less than the employee's estimated total cognizable damages, then the Commission may reduce the amount of the carrier's lien in the proportion that the settlement bears to the Commission's evaluation of the employee's total cognizable damages at law, if the Commission finds that a reduction is equitable to all parties and serves the interests of justice. § 42-1-560(f). Once the lien and other specified expenses[5] are paid, any balance remaining is placed into a fund which

---

settlement divided by total cognizable damages)lien—carrier's share of attorney's fees and costs = recovery by carrier. In this case, the total cognizable damages were set at $13.5 million, and the settlement was for $4.2 million. 4,200,000/13,500,000=.3111. Therefore, the amount of the reduced lien was computed by multiplying the original lien by .31.

4. *Kirkland v. Allcraft Steel*, 329 S.C. 389, 496 S.E.2d 624 (1998).

5. These expenses include reasonable and necessary expenses, including attorney's fees, incurred in effecting recovery. § 42-1-560(b).

shall be "applied as a credit against future compensation benefits for the same injury or death and shall be distributed as provided in subsection (g)." § 42–1–560(b).

The policy issues surrounding subrogation in a workers' compensation setting include imposing the burden of payment upon the actual wrongdoer, and avoiding double recovery for the injured employee. 12 *Larson's Workers' Compensation Law* §§ 110.01–110.02. The "central objective [of a subrogation statute] is to provide the mechanics that will achieve ... the third party paying what it would normally pay if no compensation question were involved; the employer and carrier 'coming out even' by being reimbursed for their compensation expenditure; and the employee getting any excess of the damage recovery over compensation." *Id.* at § 116.02.

■■■ Workers' compensation benefits do not include all the various types of damages that may be recovered in 'a personal injury suit against a third party tortfeasor. *See, e.g., Garrett v. Limehouse & Sons, Inc.*, 293 S.C. 539, 360 S.E.2d 519 (Ct.App.1987)(The total cognizable damages at law are "damages which are legally recoverable in the type of action in which the settlement occurs.") For example, in a personal injury suit, the "loss compensable in a personal injury action includes such elements as pain and suffering, disfigurement, medical expenses, and lost earning capacity." F. Patrick Hubbard & Robert L. Felix, *The South Carolina Law of Torts* 555 (2d ed.1997). The workers' compensation claimant's benefits, however, fall into two categories "benefits to the worker for physical injury, and benefits to the dependents in case of death. Benefits for physical injury, in turn, are of two kinds: wage-loss payments based on the concept of disability; and payment of hospital and medical expenses occasioned by any work-connected injury, regardless of wage loss or disability." *Larson's, supra*, § 80.01. Since a personal injury settlement with a third party tortfeasor includes elements that are not included in the workers' compensation benefits, it follows that the carrier's lien should not always be satisfied in full from the settlement proceeds. In *Kirkland v. Allcraft Steel*, 329 S.C. 389, 496 S.E.2d 624 (1998), this Court set out examples of factors to be considered by the Commission when deciding whether or not it is "equitable to all parties concerned and serve[s] the interests of justice" to reduce the carrier's lien.

The four suggested factors included "strength of the claimant's case, likelihood of third party liability, claimant's desire to settle, and whether carrier is unreasonably refusing to consent to the settlement." *Kirkland, supra* at 394, 496 S.E.2d at 626.

## ISSUES

I.   Did the Court of Appeals err in including future medical expenses in Carrier's lien under § 42–1–560(f)?

II.   Did the Court of Appeals err in holding that the fund established under § 42–1–560(g) is subject to the reduction formula in § 42–1–560(f)?

III.   Did the Court of Appeals err in its application of the *Kirkland* factors?

## ANALYSIS

### I.   Future Medical Expenses and Carrier's Lien

■   One of the questions before us is whether the Carrier's lien, which can be discounted by subsection (f), includes medicals that have not yet been incurred, and whether "future compensation benefits" for which a fund is established under subsection (g), includes future medical expenses.  We find the Commission properly held that the Carrier's lien includes only those medical expenses paid or accrued but not yet paid at the time of the third party settlement, and does not include future medical expenses.  Rather, future medicals are to be included in the fund designated to pay future compensation benefits under subsection (g).

Breeden argues that the definition of compensation in the fund provided for in subsection (g) includes only future economic benefits and not future medicals because that subsection of § 42–1–560 only uses the term compensation.[6]  While this argument is facially persuasive, we must decline to read the statute that way. If we were to accept Breeden's argument that 'compensation' includes only that described in § 42–1–

---

6.   The definition of "compensation" under § 42–1–100 is "the money allowance payable to an employee or to his dependents as provided for in this Title and includes funeral benefits provided in this Title."

100, then there would be no reason for subsection (g) to exist.[7] Under § 42–1–560(b), the Carrier's lien includes "the total amount of compensation, *including medical* and other expenses, paid, or to be paid by such carrier...." (emphasis supplied). Pursuant to the statute the carrier's lien includes the "total amount of *compensation ... paid or to be paid.*" If we were to construe the language in subsection (b) to include compensation only as set forth in § 42–1–100, then the fund in subsection (g) would be unnecessary, as there would be nothing to put into that fund. This is because all of the compensation, including all future economic damages and medicals, would be folded into the Carrier's lien, leaving nothing for a fund under (g). We hold that the language in § 42–1–560(f) must be read to require the Carrier's lien to include those medical expenses paid, or accrued but not yet paid, at the time of the settlement and does not include medical expenses that have not yet accrued.

■■■ After the lien is calculated, and reduced if equitable, "... any balance remaining after payment of necessary expenses and satisfaction of the carrier's lien shall be applied as a credit against future compensation benefits for the same injury or death and shall be distributed as provided in subsection (g) of this section." S.C.Code Ann. § 42–1–560(b). We hold that "future compensation benefits for the same injury or death" includes future medicals in addition to economic compensation. It would be inequitable to allow the employee to recover damages based on future medicals, and then disallow recovery for the Carrier. "The 'compensation' expenditure for which the insurer is entitled to reimbursement includes not only wage benefits but hospital and medical payments as well; this is usually expressly stated, but is the correct result even if the reimbursement provision speaks only of 'compensation' paid ... The obvious intention of the legislature in these [subrogation] statutes is to make the insurer whole, not to repay the insurer certain selected and stipulated parts of its compensation costs." *Larson's, supra,* § 117.03. While we reverse the Court of Appeals to the extent that it held future

---

7. We must construe a statute to give effect to all of its provisions. *Nexsen v. Ward,* 96 S.C. 313, 80 S.E. 599 (1914). "[E]very word, clause, and sentence must be given some meaning, force, and effect, if it can be done by any reasonable construction." *Id.*

medicals are included in the Carrier's lien we affirm the decision that future medicals are to be included in establishing the amount of the fund under § 42–1–560(g).

## II. Application of Lien Reduction to Future Compensation

■ We disagree with the Court of Appeals that the future compensation fund established pursuant to § 42–1–560(g) is subject to the lien reduction under § 42–1–560(f). Section 42–1–560(f) permits reduction of the Carrier's lien as defined by § 42–1–560(b). Subsection (g) specifically states that "[w]hen there remains a balance of five thousand dollars or more ... *after* ... *satisfaction of carrier's lien* ... which is applicable as a credit against future compensation benefits for the same injury ... the entire balance shall in the first instance be paid to the carrier by the third party." (emphasis supplied). The Carrier's lien is a separate pot of money that is not included in the same pool of money creating the fund under subsection (g). As we held above, future medicals are to be included in the fund under subsection (g), but are not included in the carrier's lien under subsection (f). Because the statute clearly separates the carrier's lien from the fund for future reimbursement, and because there is no provision for the fund under subsection (g) to be reduced under subsection (f), we reverse the Court of Appeals to the extent that it held subsection (g) was subject to the reduction provisions under subsection (f).

## III. Kirkland Factors

■ In S.C.Code Ann. § 42–1–560(f), the General Assembly set out the formula for if and how a carrier's lien may be reduced. The Commission determines whether or not it is equitable to both parties and in the interest of justice to reduce the lien using, among other considerations, the four factors suggested in *Kirkland*. The Commission is not required to consider all of the factors, and is free to consider different factors than the ones listed in *Kirkland* if implicated by the facts. The Commission does not need to follow specific *Kirkland* factors in deciding whether or not it is equitable to reduce the carrier's lien, but instead the Commission should look at the policy behind subrogation, and judge whether or not a reduction is warranted on a case-by-case basis. The

Commission should be given wide discretion in deciding which factors to consider, and what weight to give each factor. The factors are to be used only to decide whether to reduce the lien and have no bearing on the *amount* of the reduction. Section 42–1–560(f) sets forth a specific formula [8] that should be followed if the Commission determines that the lien should be reduced.[9]

In this case, the Court of Appeals correctly held that the Commission erred in its application of some of the *Kirkland* factors. The four suggested factors include "strength of the claimant's case, likelihood of third party liability, claimant's desire to settle, and whether carrier is unreasonably refusing to consent to the settlement." *Kirkland, supra* at 394, 496 S.E.2d at 626. The likelihood of third party liability weighs against reduction of the lien because the employer should not have to shoulder an undue proportion of the liability for claimant's damages if there is clear third party liability. The strength of the claimant's case also weighs against reduction where the claimant has a strong case. The claimant's desire to settle relates to the settlement with the third party, not against the employer or carrier. This third factor weighs in favor of a reduction of the lien in this case because Claimant needed to settle for the benefit of his family. The fourth factor, whether the carrier is unreasonably refusing to consent to a settlement, weighs in favor of the equitable reduction of the lien, if the Carrier is unreasonably refusing to agree to the settlement.

■ The Commission also considered three additional factors: Carrier's conduct in fulfilling its statutory obligations; whether the Carrier has actual exposure [10]; and, the extent of the Claimant's injuries. The Court of Appeals held that the first two factors should not be considered, and that the third factor could be considered as a subset of the strength of the

---

8. See *supra* note 3.

9. The Court of Appeals incorrectly stated that the *Kirkland* factors should be considered "in deciding whether *or in what amount* to reduce the lien." *Breeden, supra,* at 208, 546 S.E.2d at 661 (emphasis supplied).

10. In this case, there was evidence that the claim was re-insured by the Carrier.

Claimant's case. We agree with the Court of Appeals that whether the Carrier has actual exposure should not be a factor in determining whether the lien should be reduced. A carrier should not be penalized for protecting its interests by buying re-insurance. However, the Court of Appeals erred in determining that the Commission should not have considered the carrier's conduct in fulfilling its statutory obligations, and the extent of the claimant's injuries. Once again, the Commission should apply only factors implicated by the evidence in the case before it, and apply these on a case-by-case basis.

Both the Commission and the Court of Appeals held that it was equitable to reduce the lien, after application of the *Kirkland* factors. We agree. Because we hold that the *Kirkland* factors only apply to the determination of whether to reduce the lien, and not to the amount by which to reduce it, we reverse the Court of Appeals to the extent that it remanded the case to the Commission to determine the percentage by which the lien should be reduced. However, we uphold the Court of Appeals' decision that a reduction in the Carrier's lien is warranted, and reinstate the Commission's determination that the lien should be reduced by a factor of .31.

## CONCLUSION

We hold the *Kirkland* factors are a non-exclusive list, which can be applied to determine whether it is equitable to both parties and in the interests of justice to reduce the lien. Once it is determined that a reduction is appropriate, no decision is needed on the amount of the reduction, rather there is a mechanical application of the statute's formula. We hold that future medicals are not included in the carrier's lien under subsection (f), only those medicals which have already been paid or accrued but not yet paid at the time of the settlement. We also hold that future medicals are to be included in the future compensation fund under subsection (g), which is not subject to the lien reduction under subsection (f).

We reinstate the Commission's calculation of the Carrier's lien to include compensation, paid and accrued but not yet

paid, and medical benefits paid, or accrued but not yet paid. We also reinstate the Commission's determination of the factor by which the lien should be reduced. However, the Commission must recalculate the fund under subsection (g) to include future medical benefits. We remand this case to the Commission for proceedings consistent with this opinion.

TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur.

## ORDER

We deny the Petition for Rehearing but withdraw Opinion Number 25652 filed May 19, 2003, in order to clarify one point. The new opinion removes the language stating "reduced the lien by a factor of .31" and replaces the language with "reduced the lien in the same proportion as the third party settlement bore to the total cognizable damages." Also, in footnote 3, the new opinion removes the language "therefore, the lien was reduced by a factor of .31" and replaces it with "therefore, the amount of the reduced lien was computed by multiplying the original lien by .31."

IT IS SO ORDERED.

/s/ JEAN H. TOAL, C.J.
/s/ JAMES E. MOORE, J.
/s/ JOHN H. WALLER, JR., J.
/s/ E.C. BURNETT, III, J.
/s/ COSTA M. PLEICONES, J.